UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In Re: Darryl F. Carl,

                        Debtor.           Case No. 12-10122

-----------------------------------------------------------

Darwin (Huck) Spaulding Living Trust,

                    Plaintiff,

      v.                         Stipulated Facts

Darryl F. Carl,

                    Defendant.

## PLAINTIFF'S PRE-TRIAL MEMORANDUM

GANZ WOLKENBREIT & SIEGFELD LLP

Attorneys for Plaintiff
Office & PO Address
1 Columbia Circle
Albany, NY 12203
(518) 869-9500

00071816.WPD

## PRELIMINARY STATEMENT

This Memorandum is submitted on behalf of Plaintiff Darwin ( Huck) Spaulding Trust ("Trust") to orient the Court with respect to Plaintiff's position on the relevant issues in this action to deny the Debtor ("Defendant" or "D. Carl") a discharge.

## INTRODUCTION

It is a fundamental principle that the benefits of bankruptcy protection require a debtor to be honest and transparent about his assets. See McCarthy v. Nandalall (In re Nandalall), 2010 Bankr. LEXIS 1539 (Bankr. N.D.N.Y. 2010) ("a discharge is reserved for the honest but unfortunate debtor. D.A.N. Joint Venture v. Cacioli (In re Cacioli), 463 F.3d 229, 234 (2d Cir. 2006). To obtain a discharge, debtor must fully and accurately disclose all material facts. See Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Bernard (In re Bernard), 99 B.R. 563, 570 (Bankr. S.D.N.Y. 1989)"). See also Schwab v. Reilly, 210 WL 24000 (U.S. Sup. Ct. 2010). This Court has most recently emphasized these principles in its decision denying a discharge in Ross v. Wolpe (In Re Wolpe), 2013 Bankr. LEXIS 1618 (NDNY 2013).

Plaintiff will prove at trial that  D. Carl has engaged in a course of conduct[1], both pre-bankruptcy, as covered by 11 U.S.C. §727(a)(2)(A), and post-bankruptcy, as covered by 11 U.S.C. §727(a)(4)(A), that demonstrates that he is not an honest debtor. As such, Defendant should be denied a discharge.

## BACKGROUND

The Trust lent money to Defendant for many years. As of the summer of 2010 such loan was memorialized in a Promissory Note dated August 1, 2010 in the sum of $674,185.66. Defendant

---

[1] While Plaintiff believes the proof will demonstrate numerous instances of false and misleading statements and numerous omissions, a single  instance of a "false oath or account" is sufficient to justify a denial of discharge. Smith v. Grondin, 232 B.R. 274, 277 (BAP - 1st Cir. 1999)

defaulted on the loan as of June 1, 2011, and on November 16, 2011, Trust was granted summary

judgment against Defendant personally in the amount of $706,725.52 .

In early June 2011 Defendant conveyed the home he owned solely in his own name at 43 Carl

Lane which had a mortgage balance of $298,000 and a fair market value of $584,000 ( i.e. having

an equity of $286,000) to himself and his wife. At the same time he refinanced and took out a

$65,000 second ( home equity) mortgage. He then closed his family business, filed it in bankruptcy

(case #11-12621) and had a new business Albany Speed Shop, Inc ("ASS") funded with the proceeds

from the home equity loan. ASS was purportedly owned solely by his wife Melissa Carl. Defendant

worked at that business, held no other employment and received no compensation for his efforts. All

of the website and social media marketing represented D. Carl as an owner of the ASS business.

Defendant signed a Chapter 7 Petition and related required schedules and statements and filed

for bankruptcy on January 20, 2012. The Trust's review of the bankruptcy schedules led it to

commence this action under §727 because it was clear that Defendant had concealed property within

one year before the date of the filing of a petition with intent to hinder Trust's collection efforts and

knowingly and fraudulently made false statements on his schedules and Statement of Financial

Affairs. It now appears that Defendant conveyed the equity in his home fraudulently & used it in

a business in which he falsely claimed to have no beneficial ownership interest , failed to schedule

any of the various income rights he had as an equitable owner of ASS, and failed to amend his

schedules to list his substantial inheritance from his mother Sandra Carl who died within 180 days

of his bankruptcy filing, and thereafter failed to amend his schedules to reflect the withdrawal of her

Estate's claim against him.

# I

## ANALYSIS UNDER 11 U.S.C. §727(a)(2)(A)

11 U.S.C. §727(a)(2) provides that the Court will grant a debtor a discharge unless "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed (A) property of the debtor, within one year before the date of the filing of the petition."

The Bankruptcy Court is specifically directed to examine a debtor's pre-bankruptcy conduct by this section of the statute. the conduct of the debtor in the pre-bankruptcy period need not be aimed at the creditors generally. See Locke v. Schafer (In re Schafer), 294 B.R. 126, 129 (N.D. Ca. 2003). There, the Court held that, pursuant to 11 U.S.C. §727(a)(2)(A), when property is concealed or transferred, a discharge may be denied because "discharge is to be denied any debtor who has hindered a creditor. Once property is concealed from a single creditor, the debtor has lost his discharge." See also First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339 (9th Cir. 1986) ("Further, the statute requires only that the debtor make the transfer with the intent to hinder, delay or defraud a creditor. There is no requirement that debtor intends to defraud all of his creditors.").

It is important to note that the phrasing of the statute is in the disjunctive. Therefore, the statute permits denial of discharge when the debtor "with intent to hinder, delay **or** defraud a creditor..." (emphasis supplied). See In re Rowe, 234 F.Supp. 114, (E.D.N.Y. 1964) (discussing intent to hinder, delay, or defraud and finding that "the statute reads in the disjunctive so that only one of these three motivating factors is required"). See also Bruno Machinery Corp. v. Troy Dye

Cutting Co. (In re Bruno Machinery Corp.), 2010 Bankr. LEXIS 1714, *29-30 (Bankr. N.D.N.Y. 2010). So long as there is an intent to "hinder", the statutory element has been made out.

Similarly, the statute requires that, with respect to his property, debtor has "transferred, removed, destroyed, mutilated **or** concealed..." (emphasis supplied). So long as there is a "concealment" of property, the statutory element is made out. In McCormick v. Security State Bank, 822 F.2d 806 (8th Cir. 1987), a case factually similar to Trust's case against Defendant, a debtor was denied a discharge for what the Court characterized as "lying" to a bank in an interview about his ability to make a payment due on a note owed to the bank. This was due to the fact that the debtor **failed to disclose** certain assets ($55,000-$60,000) at his disposition that would have enabled him to make the payment. The McCormick Court denied the discharge under §727, finding that the debtor concealed assets with the intent to hinder and delay collection. Id. at 808. Similarly, In Pereira v. Gardner (In re Gardner), 384 B.R. 654, 663 (Bankr. S.D.N.Y. 2008) the Court denied a debtor's discharge pursuant to §727(a)(2), finding that "concealment alone is sufficient under this subsection." See also In re Scott, 172 F.3d 959, 967 (7th Cir. 1999)("Concealment . . . includes preventing discovery, fraudulently transferring or withholding knowledge or information required by law to be made known.")(citing U.S. v. Turner, 725 F.2d 1154, 1157 (8th Cir. 1984));[2]Rozen v. Bezner, 996 F.2d 1527, 1532 (3d. Cir. 1993)("what is critical under the concealment provision of §727(a) is whether there is a concealment of property, not whether there is concealment of a transfer."). As to what constitutes "concealment" for §727 purposes, it has been stated in the leading treatise, Collier, Bankruptcy §727.02, that "concealment is not confined to physical secretion. It

---

[2] In re Scott cites Black's Law Dictionary 289 (6th Ed. 1990) for the definition of concealment as "withholding of something which one knows and which one, in duty, is bound to reveal."

covers other conduct, such as placing assets beyond the reach of creditors or <u>withholding knowledge of the assets by failure or refusal to divulge owed information</u>." (emphasis supplied)

*The Transfer of 43 Carl Lane*

The proof at trial will show that Defendant knew that he had substantial ($286,000) equity in his home and not only transferred the portion of his equity over his homestead exemption for no economic consideration[3] but also used that equity to have his wife operate a business which provided for all his daily living needs while he claimed no income. Melissa Carl is the sole recipient of the cash withdrawn from the home's equity, which existed before she became an owner of the property, and not even her agreeing to be jointly liable for the mortgage debt can provide "fair consideration" for that benefit at a time when Debtor had creditors. See <u>Cabrera v. Ferranti</u>, 89 A.D.2d 546 (1982). Given the other bankruptcy filing-related actions in this case, it is clear that this pre-petition conduct is part of an overall plan by Defendant. In <u>Sharban v. Larson</u> (In re Larson), 2010 Bankr. LEXIS 1186 (Bankr. D.Ma. 2010), the Court, in revoking a discharge, found debtor's pre-petition conduct demonstrated "a long-standing practice of attempting to conceal her assets from her creditors." <u>Sharban</u> at *14. A transfer by a married man of his real property to himself and as wife when he was in default to his creditors, has been held fraudulent both under state law and bankruptcy law, despite the cry of "estate planning," leading to a denial of discharge. See <u>Gold v. Laines ( In Re Laines)</u>, 352 B.R. 397 (ED Va 2005). "Love and affection" between husband and wife is <u>not</u> consideration for a real property transfer. See <u>Hickland v. Hickland</u>, 100 A.D.2d 643 (1984); <u>Ally Bank v. Reimer</u>, 2010 U.S. Dist. LEXIS 7887 (E.D.N.Y. 2010).

---

[3] The deed recites a $10.00 consideration and no transfer tax was paid. The lack of any meaningful consideration set forth in the deed is strong evidence that the Debtor provided no such consideration. See <u>Geltzer v. Borriello (In Re Borriello)</u>, 329 B.R. 367 (Bankr. E.D.N.Y. 2005).

## The Operation of Albany Speed Shop

The proof at trial will show that Debtor worked full time at Albany Speed Shop performing tasks which were both administrative (including marketing) and direct mechanic services and yet received no compensation for his efforts. The marketing communications continually referred to Debtor as an owner of the business. Melissa Carl, his wife drew a $975 a week salary even after mid-March 2012 when she took a full time job at another dealership. Melissa paid all of Darryl Carl's living expenses. The case law discussed below holds such a set of circumstances to be a basis to deny a discharge due to the concealment of equitable ownership of a business.

Courts have analyzed equitable interests under 727(a)(2), finding that this a type of concealment. "Courts have found an equitable interest where a debtor transfers or allows a third party to assume legal title under suspicious circumstances such as after a debtor has suffered a money judgment or otherwise is under financial pressure but nevertheless retains attributes of beneficial ownership." Rotella & Associates P.A. v. Bellassai, 451 B.R. 594, 600 (Bankr. S.D. Fl. 2011). "Numerous courts have found that debtors who transferred all of their salary, or their right to receive salary, to a family member or to a corporation owned by a family member, yet retained the benefits of such salary, should be denied discharge" citing Baron v. Klutchko, 338 B.R. 554, 571 (Bankr. S.D.N.Y. 2005). In a case called Coady v. D.A.N. Joint Venture L.P., 2009 U.S. Dist. LEXIS 131019 (S.D.Fl. 2009) aff'd 488 F.3d 1312 (11th Cir. 2009), a discharge was denied where debtor worked for his wife's business as an uncompensated independent contractor and she paid his personal and living expenses. Similarly, in Rotella, the debtor transferred the assets of the company to a new corporate entity owned by a good friend (who later became his girlfriend). The transferee had minimal involvement in the company and the debtor's knowledge, advice and daily on-premises

presence insured the company's success, the debtor received no salary and all of the debtor's personal and living expenses were paid out of the company's business account. The court found that "this arrangement enabled the debtor to shield his assets from creditors by diverting the fruits of his labors to [the girlfriend] Ms. Bellows' new corporate shell and having the uninterrupted going concern directly support his lifestyle." The court found that the debtor had an equitable interest in the company. Having concealed his equitable interest in the company by "a sham transfer where title to the property is transferred but the benefits of ownership are retained" and the court found that the debtor intended to hinder, delay and defraud creditors based on the badges of fraud.[4] In Rotella, the court relied on the close relationship between the debtor and the transferee, the debtor's course of conduct after the onset of his financial difficulties, the general timing of the events in question, the fact that the debtor's labor and experience contributed to the company's success and that he was not compensated for that contribution in any way which could be available to creditors, and the court denied the debtor's discharge under 727(a)(2)(A). The court concluded by saying "the debtor intended to short-change his creditors by diverting and concealing the fruits of his industry to [his girlfriend] who then provided the debtor with use and enjoyment of material comforts purchased with those fruits. Fraudulent acts are as varied as the fish in the sea." The atypical concealment alleged here is not reason alone to absolve the debtor of concealment in the one year pre-petition period. Further, Coady v. D.A.N. Joint Venture L.P., 588 F.3d 1312 (11 Cir. 2009) found that 11 U.S.C. 727(a)(2) does not require a transfer at all because it refers to the transfer or concealment of

---

[4] The lack or inadequacy of consideration for the property received, the nature of the relationship between the transferor and the transferee, whether the transferor retains possession, control, benefits or use of the property in question, whether the transfer resulted in insolvency, the cumulative effect of the debtor's transactions and course of conduct after the onset of financial difficulties or threat of suit by creditors and a general chronology in time.

assets. That case found that the debtor acquired and concealed an equitable interest in his wife's businesses where he worked as an uncompensated independent contractor.

A very recent case, <u>Kaler v. Hentz (In re Hentz)</u>, 2013 Bankr. LEXIS 1137 (Bankr. D.N.D. 2013) is directly on point. In that case Mr. Hentz liquidated his business but had numerous creditors. His wife opened a business involved in a similar type of work in which Debtor had made a successful living. He did administrative, manual and technical work for her because she had a full time job as an R.N. and had little or no experience in the technical aspects of the business. The Debtor received no compensation from the wife's business and was otherwise unemployed, but used a vehicle owned by the wife's business and relied on the income generated in the wife's business for his support and maintenance. The Court denied Hentz a discharge because it was clear Debtor held an equitable ownership in the business, was integral to its success and received income indirectly from it. Citing some of the authorities discussed above (e.g. <u>Coady v. D.A.N. Joint Venture</u>, <u>supra</u>), the Court held that a debtor's efforts to "keep the fruits of this industry shrouded equated to intentional concealment of assets warranting denial of discharge under §727(a)(2)" at *36.

## II

## ANALYSIS UNDER 11 U.S.C. §727(a)(4)(A)

Section 727(a)(4)(A) provides for denial of discharge if "the debtor knowingly and fraudulently, in or in connection with the case (A) made a false oath or account..."

A plaintiff must show that the debtor made a statement under oath, that the statement was false, that the debtor knew the statement was false and the debtor made the statement with fraudulent intent and the statement was related materially to the bankruptcy case. <u>Forrest v. Bressler</u> (<u>In re</u>

Bressler), 387 B.R. 446 (Bankr. N.D.N.Y. 2008). There is no doubt that the bankruptcy petition and

annexed schedules of financial affairs are statements under oath for the purposes of 11 U.S.C.

§727(a)(4)(A). See Nef v. Gannon (In re Gannon), 173 B.R. 313 (Bankr. S.D.N.Y. 1994). A false

statement can consist of either an affirmative mis-statement **or an omission.** See Republic Credit

Corp. v. Boyer (In re Boyer), 367 B.R. 34 (Bankr. D.Conn. 2007). Knowledge of falsity may be

established by the debtor's duty to review the schedules to assure accuracy. See In re Zimmerman,

320 B.R. 800 (Bankr. N.D.Pa. 2005). Fraudulent intent may be shown by reckless disregard both of

the serious nature of the information sought and the necessary attention to detail and accuracy in

answering. See In re Bressler, *supra.* See also Reynold v. Miller (In re Miller), 97 B.R. 760 (Bankr.

W.D.N.Y. 1989) ("a debtor's concealment of assets and interests by failing to list them in his

bankruptcy petition. . . has been tantamount to fraud."). 11 U.S.C. §727(a)(4)(A)'s purpose within

the statutory scheme is to ensure that the trustee and the creditors receive reliable and accurate

information in order to assist the trustee in administering the estate. See Baron v. Klutchko (In re

Klutchko), 338 B.R. 554 (Bankr. S.D.N.Y. 2005). Even if the incorrect information provided is not

prejudicial to creditors, it is still a basis for a denial of discharge because such information is

"material" to the administration of the bankruptcy case. See In re Bressler, *supra.*

Courts have repeatedly emphasized the importance of accurately completing bankruptcy

schedules and revealing all assets. There have even been instances where the failure to reveal all

assets has been the sole cause of a denial of discharge. See, e.g., Lopez v. Vehicle Removal

Corporation (In re Lopez), 111 Fed.Appx. 725 (5th Cir. 2004). In Burnes v. Pemco Aeroplex Inc., 291

F.3d 1282 (11th Cir. 2002), the same holding resulted because of the failure to list contingent and

unliquidated claims. The Court specifically held in that case "Bankruptcy Courts also rely on the

accuracy of the disclosure statements when considering whether to approve a no asset discharge.

Accordingly, the importance of full and honest disclosure can not be overstated." 291 F.3d at 1286

(emphasis supplied). The Court reiterated the Coastal Plains holding that the lack of harm to the

creditor is irrelevant because the purpose of the full disclosure requirement is to protect the judicial

system rather than the litigants. Id. Finally, the Court in Burnes v. Pemco Aeroplex held that on the

issue of whether or not there was an "intentional manipulation of the bankruptcy disclosure," such

intentional manipulation can be *inferred* from the record. It held that "the debtor's failure to satisfy

its statutory disclosure duty is inadvertent only when, in general, the debtor either lacks knowledge

of the undisclosed claims or has no motive for their concealment." 291 F.3d at 1287.  Motive to

conceal was determined to be *inferable* from the fact that the debtor stood to gain an advantage by

concealing claims from a Bankruptcy Court. This included the fact that it would be unlikely he

would have received the benefit of a no asset complete discharge had his creditors, the trustee, and

the Bankruptcy Court known that he had assets even in the form of contingent, unliquidated claims."

291 F.3d at 1288.

Here, the failure to disclose equitable ownership in Albany Speed Shop and the indirect

income Debtor received as per the case law discussed above (Rotella & Associates, P.A. v. Bellassai,

supra; Baron v. Klutchko, supra; Coady v. D.A.N. Joint Venture L.P., supra) amounts to false and

misleading omissions in the bankruptcy filings of this Debtor.

Trust will prove that the omissions and mis-statements in the schedules and statement of

financial affairs, in the aggregate, demonstrate more than a sufficient basis to establish each and

every element of 11 U.S.C. §727(a)(4)(A). In Sharban v. Larson (In re Larson), 2010 Bankr. LEXIS

1186, *14 (Bankr. D.Ma. 2010) the Court revoked a discharge and rejected a defense of

unintentional mis-statement, finding that four mis-statements/omissions in the bankruptcy proceedings, by "the sheer number and significance. . . demonstrate, at the very least, a reckless indifference to the truth – the functional equivalent to fraud." See also Vasiliades v. Dwyer, 2006 U.S. Dist. LEXIS 35317 at fn. 18 (Bankr. D.Ma. 2006) ("a pattern of numerous omissions and mis-statements by a sophisticated debtor who has a business background" leads to a conclusion that there is a sufficient basis to deny a discharge.)

## III

## ANALYSIS UNDER 11 U.S.C. §727(a)(2)(B)

This subsection of §727 deals with transfers and concealment of property by the Debtor post-petition with an intent to hinder, delay or defraud creditors. The legal analysis of this subsection of §727 is identical to that of §727(a)(2)(A) except for the time period when the fraudulent transfer or concealment takes place. See Freelife Int'l, LLC v. Butler (In re Butler), 2007 Bankr. LEXIS 797 (B.A.P. 9th Cir 2007 at *9-10). Plaintiff asserts that Debtor's actions after January 20, 2012 (the petition filing date) in continuing to not take a salary or business income while being an equitable owner of Albany Speed Shop and aggressive exploiting in social media postings of his relationship with the former customers of New Salem Saab.

The lessons to be drawn from the case law discussed above – Rotella & Associates v. Bellassai, supra; Baron v. Klutchko, supra and Coady v. D.A.N. Joint Venture, L.P., supra – are equally applicable to Debtor's wrongful post-petition conduct as they are to his conduct in the months prior to his filing. The holdings there form a more than adequate basis for a finding of violation of §727(a)(2)(B) and the resulting denial of discharge.

## IV

## THE LACK OF "PROMPT" AMENDMENT TO DEBTOR'S SCHEDULES AND SOFA IS HIGHLY RELEVANT IN THIS PROCEEDING

As is set forth in other portions of this Memorandum and will be stipulated as a fact, there have been no amendments to the Petition, Schedules or the Statement of Financial Affairs of Debtor since the inception of the case. While there is a contested issue as to Debtor's equitable ownership in Albany Speed Shop, it is not contested that there was a transfer of 43 Carl Lane within the one year prior to the bankruptcy, and it is not contested that the Debtor became entitled to acquire an interest as a beneficiary of his mother's estate within 180 days of his filing and that his mother's estate has withdrawn any claim against the bankruptcy estate. In each of those instances, Plaintiff asserts that an appropriate amendment to the bankruptcy filings should have been made promptly and the failure to do so is highly relevant to elements of the assertions under §727 so that Debtor should be denied a discharge. The Debtor has asserted, as an affirmative defense, that he is entitled until the close of the case to file amendments to his Schedules and SOFA. Counsel for Debtor may argue that the right to do so, and his intention to do so – at least with respect to the Sandra Carl Estate matters – negates any wrongful lack of action in this regard and therefore should not be utilized to deprive Debtor of a discharge. Such a defense should not be accepted.

First, Bankruptcy Rule 1007(h) provides that a debtor shall, within 14 days after acquiring knowledge of his being "entitled to acquire any interest in property," file amended or supplemental schedules. Clearly, such a 14 day action has not occurred in this case with respect to Sandra Carl Estate matters.

In <u>Britton Motor Service v. Krich</u>, 97 B.R. 919, 923 (Bankr. N.D. Ill. 1988), the court stated that "failure to **promptly** amend his schedules to reflect such omitted assets is indicative of knowing and fraudulent conduct" (emphasis supplied). In <u>Lawrence v. Childers</u>, 2012 Bankr. LEXIS 20186 (Bankr. E.D.Wa. 2012), the Court held that the debtor had "misrepresented the value of this equitable interest [in her mother's estate] and by the failure to amend that portion of the schedules continued to do so. The facts mandate the conclusion that failure to place a value on this interest in the probate estate constitutes not only a false oath but one made knowingly and fraudulently" at *15-16.

In a Florida case, <u>Backst v. Reis, (In re Reis)</u>, 372 B.R. 521 (S.D.Fl. Bankr. 2007), the court was faced with a single isolated issue, also faced by this Court. In that case, the debtor filed for bankruptcy on June 6, 2006 and his father died on July 12, 2006. The trustee brought an adversary proceeding to deny discharge based solely on the fact that the debtor had not amended his schedules to show the inheritance from his father and because he gave misleading answers at the 2004 examination related to his father and his father's property. The court denied debtor the discharge and accepted the trustee's argument that the debtor had a duty to amend his schedules regarding his right of inheritance upon learning of the inheritance. The court cited Bankruptcy Rule 1007(h).

This Court, in the complicated <u>Paul Hudson</u> bankruptcy, similarly held that Hudson's failure to schedule various transfers of his assets until after creditor Corvetti began an adversary proceeding was evidence of Hudson's disqualification as an honest debtor entitled to a discharge. See <u>Washington 1993, Inc. v. Hudson</u>, 420 B.R. 73, 79-80 (Bankr. N.D.N.Y. 2009).

The rationale for this requirement to promptly amend is set forth in the decisions of <u>In re Tully</u>, 818 F.2d 106 at 111-112 (1st Cir. 1987). The court wrote

"A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath... Sworn statements filed in any court must be regarded as serious business. In bankruptcy administration, the system will collapse if debtors are not forthcoming... The law, fairly read, does not countenance a petitioner's decision to play a recalcitrant game, one where the debtor hides, and the trustee is forced to go seek."

In In the Matter of Kilson, 83 B.R. 198 (Bankr. D. Ct. 1988), the court held that a "later disclosure does not expunge a prior false oath" and that while an amendment could be evidence of an "innocent intent", such inference of innocent intent "is slight where the debtor has changed his testimony or amended his schedules **after the trustee or creditors have already discovered what the debtor sought to hide or when the change in testimony or amended schedules are precipitated by the trustee's persistence in uncovering the truth.**" 83 B.R. at 203 (emphasis supplied). The teaching of Kilson and the other cases discussed above is, therefore, that even if Mr. Carl were to now amend, it would be too late and would not be evidence of mere inadvertent omissions or mis-statements of assets.

<u>V</u>

## <u>PLAINTIFF'S KNOWLEDGE OF DEBTOR'S FINANCIAL AFFAIRS DOES NOT MITIGATE DEBTOR'S CONCEALMENT</u>

It appears that Debtor may assert that because Plaintiff uncovered issues relating to the Sandra Carl inheritance, the transfer of 43 Carl Lane and Debtor's involvement in the operation of Albany Speed Shop that his failure to schedule such matters has not harmed the creditor or the Trustee's ability to properly administrate the estate.

The language cited in the previous section from <u>In re Tully</u> about creditors and trustees not being required to play "hide and seek" is equally true here. In <u>Sholdra v. Chilmark Financial</u>, 249 F.3d 380, 382 (5th Cir. 2001), the court granted summary judgment to the trustee denying a discharge and rejected the debtor's assertion that, because the trustee knew of the failure to make certain disclosures, such prior knowledge prevented the trustee from prevailing on its assertion that a discharge was not properly provided to the debtor.

In many of the cases discussed in Section IV above, it is clear that the trustee or creditor had done their own investigation to learn of the failure to properly list assets in the bankruptcy schedules. Despite such creditor knowledge, the court discussed and decided the creditors' motion to deny a discharge to the debtor who had not truthfully and accurately revealed all of his assets or liabilities at the outset of the case.

Similarly, in <u>Tow v. Henley</u>, 480 B.R. 708, 794-795 (Bankr. S.D. Tx. 2012) the court wrote that:

> "It is the Debtors' duty, not the duty of any of their creditors, to honestly and accurately disclose all transfers, assets, and other relevant information to the Trustee... A creditor's knowledge of a debtor's assets, ownership interest, or any other information does not relieve the debtor of his duty to the trustee... What the [creditor] knew is beside the point. The Debtors' argument that the [creditor's] knowledge of the Financial Statement and the Anderson property negates their own fraudulent intent fails as a matter of law."

## VI
## DEBTOR IS NOT ENTITLED TO THE "RELIANCE UPON COUNSEL'S ADVICE" DEFENSE TO A §727 CLAIM

Having been caught in his web of deceit and forced to testify at deposition in this adversary proceeding, Mr. Carl sought to lay blame somewhere other than at his own feet. Reliance on advice of counsel may sometimes negate the intent required for the denial of a discharge pursuant to 11 U.S.C. §727. Mr. Carl sought, belatedly, to rewrite his lies as mistakes, honestly made upon the advice of counsel. He did not assert "reliance on counsel" as an affirmative defense. As established below, any argument based on an alleged reliance on advice of counsel fails herein for numerous reasons.

His deposition ( and anticipated trial) testimony about his reliance on attorney advice does not absolve Carl of his own duty "to personally ensure that the information which [he] provided the court was accurate to the best of [his] knowledge." Kaler v. McLaren (In re McLaren), 236 B.R. 882, 898 (Bankr. N.D. 1999).

Despite receiving advice of counsel, a debtor has an independent obligation to carefully review all documents. McLaren at 898. Carl's efforts to hide behind the alleged advice of Attorney Dillon must fail. "A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." Boroff v. Tully (In re Tully), 818 F.2d 106 (1st Cir. 1987) (affirming denial of discharge).

First, there must be full and fair disclosure to the attorney such that the attorney is "made fully aware of all relevant facts." See, e.g., Kaler v. McLaren (In re McLaren), 236 B.R. 882, 897 (Bankr. N.D. 1999) (internal citations omitted) (denying a discharge despite a defense of advice of counsel).

00071816.WPD                                    16

Second, the debtor's reliance must have been reasonable and in good faith. See, e g., <u>IRS v. Colish</u> (<u>In re Colish</u>), 289 B.R. 523 (Bankr. E.D.N.Y. 2002) (revoking discharge over defense of advice of counsel).

Third, reliance on advice of counsel defense fails when it is transparently plain that the advice isn't proper (such that property should be scheduled, a box checked, or a creditor listed). See, e.g., <u>Weiss v. Winkler</u>, 2001 U.S. Dist. LEXIS 5148 (E.D.N.Y. 2001) (denying discharge over debtor's claim of inexperience of his attorney), or is so straightforward that it requires no legal explanation for an individual to answer the question or provide the accurate data. See <u>Ross v. Wolpe</u> (<u>In Re wolpe</u>), *supra., citing* <u>JP Morgan v. Koss</u> (<u>In Re Koss</u>), 403 B.R. 191, 214 (Bankr ED Mass 2009).

This Court has the ability to look to the totality of the circumstances in order to determine whether a debtor's claim of reliance on advice of counsel is credible. See, e.g., <u>Furr v. Godley</u> (<u>In re Godley</u>), 164 B.R. 780 (Bankr. S.D. Fl. 1994). Here, as will be demonstrated at trial, an analysis of the totality of the circumstances surrounding Mr. Carl's defense of reliance on advice of counsel clearly demonstrates that his claim is not credible. Mr. Carl, in fact, exhibits the necessary intent to hinder, delay or defraud Plaintiff., the Chapter 7 trustee and this Court in the administration of his bankruptcy estate.

A.    Defendant Failed to Make Full and Fair Disclosure of the Facts to His Counsel

To succeed on his defense to the 11 U.S.C. §727 action based on his claimed reliance on advice of counsel, Carl had to make a full and fair disclosure to the counsel. See, e.g., <u>In re Colish</u>, 289 B.R. 523 (Bankr. E.D.N.Y. 2002). Reliance only absolves the debtor of the intent under §727 "where the advice given was informed advice." <u>Kaler v. McLaren</u> (<u>In re McLaren</u>), 236 B.R. 882, 897 (Bankr. N.D. 1999) (denying defense of advice of counsel where the court was unpersuaded

00071816.WPD                              17

where the attorney "was fully or even substantially aware of all facts necessary to accurate preparation of the schedules and statements"); see also Roberts v. Oliver (In re: Oliver) 414 B.R. 361 (E.D.Tenn. 2009) (attorney must be fully informed before giving advice).

Once the debtor begins to provide information concerning an asset, a duty arises thereafter of accuracy and truth and to avoid negligent omission thereafter. In re Portnoy, 201 B.R. 685 (S.D.N.Y. 1996). Carl's failure to make a full and fair disclosure, and his educated decision to only selectively disclose certain assets, precludes any defense of reliance on advice of counsel. See, e.g., American State Bank v. Montgomery (In re Montgomery), 86 B.R. 948, 960 (Bankr. N.D.Ind. 1988); Equitable Bank, N.A. v. Cleveland (In re Cleveland), 1985 Bankr. LEXIS 6132 *23 (Bankr. E.D.Va. 1985).

    B.    Reliance on the Advice of Counsel Must Be Reasonable and in Good Faith.

Reliance on advice of counsel "must be in good faith and any protection based on reliance on debtor's counsel will only act as protection to the extent the reliance was reasonable." IRS v. Colish (In re Colish), 289 B.R. 523, 542 (Bankr. E.D.N.Y. 2002) (revoking discharge for failure to disclose future interests on schedules). Barnett Bank of Tampa N.A. v. Muscatell (In re Muscatell), 113 B.R. 72, 74 (Bankr. M.D. Fl. 1990) ("It must be established that the reliance occurred in fact and that the reliance was in good faith."). In Muscatell, the Court denied the debtor's discharge due to the debtor's failure to list numerous assets, including joint accounts, where the debtor claimed he relied on advice of counsel. In In re Colvin, 288 B.R. 477 (Bankr. E.D.Mich. 2003), a case under 11 U.S.C. 521, the debtors' claim for an exemption was denied despite their arguments of reliance on advice of counsel where the debtors' attorney failed to ask about tax refunds and the Court held that "it was plainly not reasonable for the debtors to rely on that failure." Colvin at 483. Similarly,

any failure of Attorney Dillion to gather other documents or probe Carl on various issues does not absolve Carl of his obligations. Failure to carefully read and review the Petition and SOFA is no defenses. See Ross v. Wolpe, *supra; citing* In Re Zimmerman, 320 B.R. 800,806 Bankr MD Pa 2005) Like in Colvin, it is not reasonable for Carl to have relied on Attorney Dillon's failure to ask him the specific questions. Like in Colvin, where Schedule B, Line 17 explicitly required the disclosure of tax refunds, here, question 10(a) of the Statement of Financial Affairs specifically required the disclosure of transfers in the year prior to the bankruptcy filing and, like in Colvin, Darryl Carl's failure to make such disclosure can not be excused on the basis of his claim of advice of counsel, particularly where, as here, Carl did not provide accurate and complete information to his attorneys.

   C.    The Advice Relied Upon Can Not Be Improper

   Simply stated, "advice of counsel is not a defense if the action counsel advised is improper." In re Shebel, 54 B.R. 199, 203 (Bankr. D.Vt. 1985) (granting discharge only because testimony showed that the debtor intended to amend the schedules as soon as accurate information was available). "The defense of reliance on counsel is not available when it is transparently plain that the advice is improper. The schedules made it transparently plain to the debtors that they were required to disclose [certain items] even if their attorney did not inform them of that specific disclosure obligations." In re Colvin, 288 B.R. 477, 483 (Bankr. E.D.Mich.2003) (internal citations omitted). See also Furr v. Godley (In re Godley), 164 B.R. 780, 781 (Bankr. S.D.Fl. 1994) ("the defense of reliance on counsel is not available when it is transparently plain that the advice is improper") (internal citations omitted); Weiss v. Winkler, 2001 U.S. Dist. LEXIS 5148 *12 (E.D.N.Y. 2001) (same); In re Kelly, 135 B.R. 459, 469 (Bankr. S.D.N.Y. 1992); Barnett Bank of Tampa N.A. v.

Muscatell (In re: Muscatell) 113 B.R. 72, 75 (M.D.Fl. 1990) (denying discharge despite defense of

advice of counsel and finding that "advice of counsel to the effect that property which the bankrupt

undoubtedly owned was not required to be scheduled was not an acceptable defense for failure to

schedule property since such advice related to a pain, palpable and transparent fact."); Montey Corp.

v. Maletta (In re: Maletta), 159 B.R. 108, 112 (Bankr. D. Conn. 1993) (denying discharge over claim

of reliance on advice of counsel because "the debtor is not exonerated by pleading that he or she

relied on patently improper advice of counsel.").

    Claiming a mistaken belief on the part of the attorney, for example with respect to the use

of proceeds from the home equity loan to finance Albany Speed Shop, is insufficient to support a

defense of reliance on advice of counsel.  In Ramos v. Collins (In re Collins), 19 B.R. 874, 878

(Bankr. M.D.Fl.1982), discharge was denied where "counsel seized on some legal authority and the

legislative history to suggest that [an action was permissible]." Such advice of counsel was not a

defense because the advice was, in fact, improper. In Collins, the Court refused to allow the debtor

to simply claim mistake and counsel to claim "blame me not the debtor, it was due to mistake and

inadvertence" and denied the discharge despite the defense of advice of counsel. Similarly, here, Mr.

Dillon's improper advice, and complicity in allowing Mr. Carl to fail to fully and accurately disclose

or describe the his property transfer and his hidden interest in Albany Speed Shop on his statement

of financial affairs does not serve to negate Carl's intent under §727.

    D.    The Totality of the Circumstances Clearly Indicates That Carl's Reliance on Advice
          of Counsel Argument Is Not Credible.

The Court is entitled to review the totality of the circumstances, including the debtor's

education, business experience, testimony of the debtor, other testimony at trial, and the Court's own

observations regarding a debtor and other's conduct in determining whether there is an appropriate

reliance on advice of counsel defense. See, e.g., <u>Gordon v. Hutchinson</u> (<u>In re Hutchinson</u>), 328 B.R.

30 (Bankr. W.D.N.Y. 2005) (denying discharge over advice of counsel defense because "any

testimony of the debtor to that effect I find, after hearing his testimony, observing him at trial, and

considering other matters discussed in this decision and order, not to be credible"); <u>Montey Corp.</u>

<u>v. Maletta</u> (<u>In re: Maletta</u>), 159 B.R. 108 (Bankr. D. Conn. 1993). Darryl Carl is "a knowledgeable

and sophisticated business person who clearly has the mental capacity to understand the questions

posed on the petition." <u>Weiss v. Winkler</u>, 2001 U.S. Dist. LEXIS 5148 *4 (E.D.N.Y. 2001). Carl,

a business person should not now be permitted to suddenly feign stupidity and ignorance.

Where a debtor "unconvincingly [tries] to present a demeanor of being unintelligent and

unsophisticated," the Court may choose to disbelieve the debtor. See <u>In re Hutchinson</u> at 34 (denying

discharge where debtor claimed he did not know what a liquidated debt was but court found that he

knew what a debt was). Here, even if Carl was unaware of legal niceties , he was at least aware of

the business and economic realities of the activities in which he engaged sufficient to answer the

questions on the SOFA accurately and truthfully and can not now plead ignorance on the topic.

Where a debtor appears "evasive at times and not always forthcoming" the debtor's testimony may

defy belief such that reliance on advice of counsel is not an available defense. See, e.g., <u>Weiss v.</u>

<u>Winkler</u> at *4.

00071816.WPD                                     21

## CONCLUSION

The Court at the conclusion of the trial will be faced with the decision of whether to impose the "death sentence" of bankruptcy by denying the Debtor a discharge. Understandably there is a reluctance to do so if there are reasons to avoid doing so. However honesty and full disclosure is key and once an absence of such attributes are found to exist on a material issue with respect a bankruptcy filing it is not appropriate for the Court to minimize the wrong and reward the Debtor by providing him the "fresh start" which must be earned by honest and full disclosure. As Learned Hand wrote long ago, but echoed recently by a bankruptcy court:

> "A Court will not measure the dishonesty of a bankrupt, once that is shown; a discharge is a privilege granted only to such as do not practice on their creditors that way. The law forbids all efforts to put property beyond the reach of creditors no matter what its value; so long as the courts are tolerant of such conduct men will engage in it and the purpose of the bankruptcy act will be balked."

> Feyman v. Rosenthal (In re Feyman), 77 F.2d 320, 321(2d Cir.1935), quoted in In re DeMartino, 488 B.R. 122,131 (Bankr. EDNY 2011)

For all the reasons set forth herein and the proof to be presented at the trial of this matter, Plaintiff should be entitled to a judgment denying Defendant a discharge.

Dated: June 14, 2013

Respectfully submitted:

**ATTORNEYS FOR PLAINTIFF**

GANZ WOLKENBREIT & SIEGFELD LLP

By: _____
Robert E. Ganz
Office and Post Office Address
One Columbia Circle
Albany, New York 12203
(518) 869-9500
reg@gwlaw.com