UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---

In Re: Darryl F. Carl,

       Debtor.     Case No. 12-10122

-----------------------------------------------------

Darwin (Huck) Spaulding Living Trust,

        Plaintiff,

  v.          Adversary No. 12-90078

Darryl F. Carl,

       Defendant.

---

## PLAINTIFF'S POST-TRIAL MEMORANDUM

---

GANZ WOLKENBREIT & SIEGFELD LLP

Attorneys for Plaintiff
Office & PO Address
1 Columbia Circle
Albany, NY 12203
(518) 869-9500

00073332.WPD

# TABLE OF AUTHORITIES

## Cases

Aiken-Augusta Autobody, Inc. v. Groomes (In re Groomes),
    2002 B.R. LEXIS 1858 (Bankr. D.S.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Ally Bank v. Reimer, 2010 U.S. Dist. LEXIS 7887 (E.D.N.Y. 2010) . . . . . . . . . . . . . . . 9

American State Bank v. Montgomery (In re Montgomery),
    86 B.R. 948, 960 (Bankr. N.D.Ind. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985) . . . . . . . . . . . . . . . . . . . . 28

Backst v. Reis, (In re Reis), 372 B.R. 521 (S.D.Fl. Bankr. 2007) . . . . . . . . . . . . . . . . . 22

Barnett Bank of Tampa N.A. v. Muscatell (In re Muscatell),
    113 B.R. 72, 74 (Bankr. M.D. Fl. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

Baron v. Klutchko, 338 B.R. 554, 571 (Bankr. S.D.N.Y. 2005) . . . . . . . . . . . . 14, 15, 17

Boroff v. Tully (In re Tully), 818 F.2d 106 (1st Cir. 1987) . . . . . . . . . . . . . . . . 23, 24, 26

Britton Motor Service v. Krich, 97 B.R. 919, 923 (Bankr. N.D. Ill. 1988) . . . . . . . . . . 22

Browning Mfg. v. Mims (In re Coastal Plains), 179 F.3d 197, 208 (3rd Cir. 1999) . . . . . 15

Bruno Machinery Corp. v. Troy Dye Cutting Co.
    (In re Bruno Machinery Corp.), 2010 Bankr. LEXIS 1714,
    *29-30 (Bankr. N.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Burnes v. Pemco Aeroplex Inc., 291 F.3d 1282 (11th Cir. 2002) . . . . . . . . . . . . . . . 15, 16

Cabrera v. Ferranti, 89 A.D.2d 546 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Coady v. D.A.N. Joint Venture L.P., 2009 U.S. Dist. LEXIS
    131019 (S.D.Fl. 2009) aff'd 488 F.3d 1312 (11th Cir. 2009) . . . . . . . 11, 13, 16, 17

Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Bernard (In re Bernard),
    99 B.R. 563, 570 (Bankr. S.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

D.A.N. Joint Venture v. Cacioli (In re Cacioli), 463 F.3d 229, 234 (2d Cir. 2006) . . . . . 1

Equitable Bank, N.A. v. Cleveland (In re Cleveland),
    1985 Bankr. LEXIS 6132 *23 (Bankr. E.D.Va. 1985) . . . . . . . . . . . . . . . . . . . . 27

Feyman v. Rosenthal (In re Feyman), 77 F.2d 320, 321(2d Cir.1935) . . . . . . . . . . . . . . 34

Forrest v. Bressler (In re Bressler), 387 B.R. 446 (Bankr. N.D.N.Y. 2008) . . . . . . . . . . 14

Freelife Int'l, LLC v. Butler (In re Butler), 2007 Bankr. LEXIS 797
  (B.A.P. 9th Cir 2007 at *9-10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Furr v. Godley (In re Godley), 164 B.R. 780 (Bankr. S.D. Fl. 1994) . . . . . . . . . . . 26, 29

Gold v. Laines ( In re Laines), 352 B.R. 397 (ED Va 2005) . . . . . . . . . . . . . . . . . . . . . 9

Gordon v. Hutchinson (In re Hutchinson), 328 B.R. 30 (Bankr. W.D.N.Y. 2005) . . 30, 31

Hamdorf v. Gritton, (In re Gritton), 2003 B.R. LEXIS 210 *12
  (Bankr. N.D. Iowa 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Hickland v. Hickland, 100 A.D.2d 643 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Colvin, 288 B.R. 477 (Bankr. E.D.Mich. 2003) . . . . . . . . . . . . . . . . . . . . . . 28, 29

In re Kelly, 135 B.R. 459, 469 (Bankr. S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . 29

In re DeMartino, 488 B.R. 122,131 (Bankr. E.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . 34

In re Leonard Chavin, 150 F.3d 726, 728 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . 18

In re Portnoy, 201 B.R. 685 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

In re Rowe, 234 F.Supp. 114, (E.D.N.Y. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Scott, 172 F.3d 959, 967 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Shebel, 54 B.R. 199, 203 (Bankr. D.Vt. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 29

In re Zimmerman, 320 B.R. 800 (Bankr. N.D.Pa. 2005) . . . . . . . . . . . . . . . . . . . 14, 28

In the Matter of Kilson, 83 B.R. 198 (Bankr. D. Ct. 1988) . . . . . . . . . . . . . . . . . . . . . 23

IRS v. Colish (In re Colish), 289 B.R. 523 (Bankr. E.D.N.Y. 2002) . . . . . . . . . . . 26, 27

Jones v. Dirty World Entertainment Recordings, LLC,
  2013 U.S. Dist. Lexis 113031 at *9,14 (E.D.KY. 2013) . . . . . . . . . . . . . . . . . . 32

JP Morgan v. Koss (In re Koss), 403 B.R. 191, 214 (Bankr ED Mass 2009) . . . . . . . . 26

Kaler v. Hentz (In re Hentz), 2013 Bankr. LEXIS 1137 (Bankr. D.N.D. 2013) . . . . . . 13

Kaler v. McLaren (In re McLaren), 236 B.R. 882, 898 (Bankr. N.D. 1999) . . . . 25, 26, 27

Kunce v. Kessler (In re Kessler), 1987 U.S. Dist. LEXIS 6094 (D. Kansas 1987) . . . . . 19

Lawrence v. Childers, 2012 Bankr. LEXIS 20186 (Bankr. E.D.Wa. 2012) . . . . . . . . . . 22

Lopez v. Vehicle Removal Corporation (In re Lopez),
    111 Fed.Appx. 725 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

McCarthy v. Nandalall (In re Nandalall), 2010 Bankr. LEXIS 1539
    (Bankr. N.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

McCormick v. Security State Bank, 822 F.2d 806 (8th Cir. 1987) . . . . . . . . . . . . . . . . . 7

Montey Corp. v. Maletta (In re Maletta), 159 B.R. 108, 112
    (Bankr. D. Conn. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 31

Nef v. Gannon (In re Gannon), 173 B.R. 313 (Bankr. S.D.N.Y. 1994) . . . . . . . . . . . . . 14

Pereira v. Gardner (In re Gardner), 384 B.R. 654, 663 (Bankr. S.D.N.Y. 2008) . . . . . . . . 8

Ramos v. Collins (In re Collins), 19 B.R. 874, 878 (Bankr. M.D.Fl.1982) . . . . . . . . . . . 30

Republic Credit Corp. v. Boyer (In re Boyer), 367 B.R. 34 (Bankr. D.Conn. 2007) . . . . 14

Reynold v. Miller (In re Miller), 97 B.R. 760 (Bankr. W.D.N.Y. 1989) . . . . . . . . . . . . . 14

Roberts v. Oliver (In re Oliver) 414 B.R. 361 (E.D.Tenn. 2009) . . . . . . . . . . . . . . . . . . 27

Ross v. Wolpe (In re Wolpe), 2013 Bankr. LEXIS 1618
    (Bankr. N.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 26, 28

Rotella & Associates P.A. v. Bellassai, 451 B.R. 594, 600
    (Bankr. S.D. Fl. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16, 17

Rozen v. Bezner, 996 F.2d 1527, 1532 (3d. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 8

Schwab v. Reilly, 210 WL 24000 (U.S. Sup. Ct. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 1

Sharban v. Larson (In re Larson), 2010 Bankr. LEXIS 1186 (Bankr. D.Ma. 2010) . . 9, 16

Sholdra v. Chilmark Financial, 249 F.3d 380, 382 (5th Cir. 2001) . . . . . . . . . . . . . . . . 24

Smith v. Grondin, 232 B.R. 274, 277 (BAP - 1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . 2

Tienda v. Texas, 358 S.W.3d 633, 645 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

Tow v. Henley, 480 B.R. 708, 794-795 (Bankr. S.D. Tx. 2012) . . . . . . . . . . . . . . . . . . 25

United States v. Kettles, 2013 U.S. App. LEXIS 5831 (6th Cir. 2013) . . . . . . . . . . . . . 32

U.S. v. Turner, 725 F.2d 1154, 1157 (8th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Vasiliades v. Dwyer, 2006 U.S. Dist.  LEXIS 35317 at fn. 18 (Bankr. D.Ma. 2006) . . . 16

Wang v. Ke, (In re Shao Ke) N.D.N.Y. Bankr. Adv. Pro. 09-50132
       (August 14, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Washington 1993, Inc. v. Hudson, 420 B.R. 73, 79-80 (Bankr. N.D.N.Y. 2009) . . . . . . 23

Weiss v. Winkler, 2001 U.S. Dist. LEXIS 5148 (E.D.N.Y. 2001) . . . . . . . . . . . 26, 29, 31

### Statutes and Other Authorities

11 U.S.C. §521 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

11 U.S.C. §727(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 13

11 U.S.C. §727(a)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 12, 17

11 U.S.C. §727(a)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

11 U.S.C. §727 (a)(4)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13, 14, 16, 19

Bankruptcy Rule 1007(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 30

Collier, Bankruptcy §727.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Federal Rules of Evidence 104 and 901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Federal Rules of Bankruptcy Procedure  9017 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

## PRELIMINARY STATEMENT

This Memorandum is submitted on behalf of Plaintiff Darwin ( Huck) Spaulding Trust ("Trust") to orient the Court with respect to Plaintiff's position on the relevant issues in this action to deny the Debtor ("Defendant", "Mr. Carl" or "Darryl Carl") a discharge. Plaintiff previously submitted an extensive Pre-Trial Memorandum. This Post-Trial Memorandum integrates the facts established at trial into the legal principles governing §727 actions discussed in the earlier submission (Points I, II, III), addresses issues of concern to Court (Credibility - Point IV; Admissibility of social media postings - Point VIII) and responds to Debtor's avoidance claims (Time to amend - Point V; Creditor knowledge of facts not disclosed by debtor - Point VI; and Reliance on counsel - Point VII).

## INTRODUCTION

It is a fundamental principle that the benefits of bankruptcy protection require a debtor to be honest and transparent about his assets. See McCarthy v. Nandalall (In re Nandalall), 2010 Bankr. LEXIS 1539 (Bankr. N.D.N.Y. 2010) ("a discharge is reserved for the honest but unfortunate debtor.") D.A.N. Joint Venture v. Cacioli (In re Cacioli), 463 F.3d 229, 234 (2d Cir. 2006). To obtain a discharge, debtor must fully and accurately disclose all material facts. See Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Bernard (In re Bernard), 99 B.R. 563, 570 (Bankr. S.D.N.Y. 1989)"). See also Schwab v. Reilly, 210 WL 24000 (U.S. Sup. Ct. 2010). This Court has most recently emphasized these principles in its decision denying a discharge in Ross v. Wolpe (In re Wolpe), 2013 Bankr. LEXIS 1618 (Bankr. N.D.N.Y. 2013).

Here, Defendant has engaged in a course of conduct[1], both pre-bankruptcy, as covered by 11 U.S.C. §727(a)(2)(A), and post-bankruptcy, as covered by 11 U.S.C. §727(a)(4)(A), that demonstrates that he is not an honest debtor. As such, Defendant should be denied a discharge. Fundamentally, the conduct involves the following:

A.     Defendant conveyed the home he owned solely in his own name at 43 Carl Lane, which had a mortgage balance of $298,000 and a fair market value of $584,000 ( i.e. having an equity of $286,000), to himself and his wife six months before he filed for bankruptcy. At the same time he refinanced and took out a $65,000  second ( home equity) mortgage.  He then closed his family business, filed it in bankruptcy (case #11-12621) and had a new business Albany Speed Shop, Inc ("ASS") funded with the proceeds from the home equity loan. ASS was purportedly owned solely by his wife Melissa Carl. Defendant worked full time at that business, held no other employment and received no compensation for his efforts. All of the website and social media marketing represented Darryl Carl as an owner of the ASS business.

B.     Defendant signed a Chapter 7 Petition and related required schedules and statements and filed for bankruptcy on January 20, 2012 which contained knowingly and fraudulently made false statements and omissions on his schedules and Statement of Financial Affairs relating to: (i) the conveyance of the equity in his home and the use of such equity in a business in which he falsely claimed to have no beneficial ownership interest; (ii) the various income rights he had as an equitable owner of ASS; and he (iii) failed to amend his schedules to list his substantial inheritance from his mother Sandra Carl who died within 180 days of his bankruptcy filing, and thereafter failed to amend his schedules to reflect the withdrawal of her Estate's claim against him.

---

[1] While numerous instances of false and misleading statements and numerous omissions were demonstrated at trial, a single  instance of a "false oath or account" is sufficient to justify a denial of discharge. Smith v. Grondin, 232 B.R. 274, 277 (BAP - 1st Cir. 1999)

## FACTS ADDUCED AT TRIAL

Through the Joint Pre-Trial Stipulation, the exhibits and the testimony received at trial, many relevant facts were adduced, and such facts can provide assistance to the Court in analyzing this case within the confines of the law, as described throughout this brief. These include:

### *Loan from the Spaulding Trust*

1.      Plaintiff lent money to defendant over time. (6/25, p. 15)[2]

2.      In August, 2010, Plaintiff and Defendant entered into a promissory note in the sum of $674,185.66. (6/25, pp. 15-16, Ex. 28; Jt. Stip of Facts #1)

3.      Defendant defaulted on June 1, 2011. (6/25, p. 17, Ex. 29; Jt. Stip of Facts #2)

4.      On November 16, 2011, prior to Defendant's bankruptcy, Plaintiff was granted a judgment in the sum of $706,725.52. (Ex. 29; Jt. Stip of Facts #3)

5.      Defendant was aware of this judgment. (6/25, p. 18).

### *Transfer of 43 Carl Lane*

6.      In 1997 Defendant acquired from his mother a 27.6 acre parcel of land located at 43 Carl Lane. Title remained solely in his name and over the years he built a 3,342 sq ft home and a separate pole barn. (Jt. Stip of Facts ##4-5)

7.      on June 8, 2011, Defendant conveyed the home he owned solely in his own name at 43 Carl Lane, which had a mortgage balance of $298,000 and appraised value of between $505,000[3] and $584,000 (6/25, p. 28, p. 135) (and Defendant believed the value to be $750,000 6/25, p. 27) to himself and his wife. (6/25, p. 25) for no economic consideration (Jt. Stip of Facts #9).  This conveyance and refinancing resulted in a higher monthly payment. (6/26, pp. 15-17).

---

[2] The format of references to trial testimony in this submission will be to the date of testimony and then to the page at which the referenced testimony is located.

[3] The $505,000 valuation did not include the pole barn structure. (Jt. Stip of Facts #7)

8.  Defendant simultaneously took out at $65,000 home equity mortgage. (6/25, p. 26)

9.  In connection with conveying the property to himself and his wife, Defendant and his wife did not meet with anyone regarding estate planning (6/26, p. 13) despite a professed concern that the stress of the New Salem Saab's collapse was impacting Mr. Carl's health and might leave the family unprotected in the event of Mr. Carl's premature death (6/25, p. 147; 6/26, p. 34)

*Albany Speed Shop*

10. Defendant closed his family's business, New Salem Saab, and filed it in Chapter 11 bankruptcy (6/25, pp. 14-15, 31) within two months of the property transfer.

11. A new business, Albany Speed Shop ("ASS") formed in 2009 (Ex. 12) was dormant until August 2011 and then was funded by the home equity loan. (6/25, p. 31)

12. Once Albany Speed Shop opened, Defendant:

- provided uncompensated services to Albany Speed Shop approximately 40 hours/week for almost a year (6/25 pp.42-43; Jt. Stip of Facts #6)

- filled in for the manager when the manager was away (6/25, p.50)

- had Albany Speed Shop pay for his cell phone (6/25, p.50)

- was responsible for all the social media, blog posting and website marketing of ASS as of October 2011 (6/25, p. 106; Jt. Stip of Facts #28)

- posted on the ASS blog in a personal managerial capacity (6/25, pp. 48-49, Ex. 23)

- Melissa Carl continued to receive her $975 per week salary from Albany Speed Shop despite no longer working there Monday through Friday (Jt. Stip of Facts #17); she continued to be the sole support for the personal living expenses of Defendant when he was providing uncompensated services and she was already working elsewhere (6/25, p. 50; 6/26, p. 24)

13. ASS was marketed as follows:

- referred to, in a letter signed by Darryl and Melissa Carl with a signature block of New Salem Saab **ALBANY SPEED SHOP** (Ex. 19), as a business that both Darryl Carl and Melissa Carl will be opening (6/25, p. 52 Ex. 19)

- from the summer of 2011 through at least the spring of 2012 to the public, including the Saab-owning public, as a business with which Defendant's name was associated as part of the ownership and management of the entity (Jt. Stip of Facts #27)

- the "offspring of New Salem Saab" (6/25, p. 105, Ex. 18)

- Defendant and his wife going "into business together" (6/25, p. 105, Ex. 18)

- On ASS's Facebook page, Darryl Carl created a link for readers to "suadeology.com", at a specific web page stating that Darryl Carl was the owner and operator of Albany Speed Shop (6/25, pp. 107-109, Ex. 21)

14. Defendant allowed the use of $55,000 of the $65,000 home equity loan to be utilized to fund the start up and operations of Albany Speed Shop (Jt. Stip of Facts #15). No other capital or loans were used for Albany Speed Shop's start up (Jt. Stip of Facts #15)

15. Defendant hoped having his name associated with ASS helped transfer the loyalty of New Salem Saab customers to Albany Speed Shop. (6/25, p.116)

16. Defendant made no efforts to correct or remove third party references in social media postings to Darryl Carl as an owner of Albany Speed Shop (Jt. Stip of Facts #29)

*Estate of Sandra Carl*

17. Defendant's mother died within 180 days after his bankruptcy filing. (6/25, p. 35; Jt. Stip of Facts #22)

18. Defendant is a beneficiary of substantial assets under his mother's will (6/25, p. 35; Jt. Stip of Facts #23)

*Bankruptcy Filings*

19.    Defendant filed for bankruptcy protection on January 20, 2012.  He signed a Chapter 7 Petition and related schedules and statements. (6/25, pp. 17-18 Ex. 24)

20.    In his schedules and Statement of Financial Affairs, Defendant:

- did not disclose the transfer of an interest in 43 Carl Lane to Melissa Carl (6/25, p.117) despite understanding that he was giving something of value away for no economic consideration (6/25, p.172-173)

- did not disclose his equitable ownership in Albany Speed Shop (6/25, p. 119)

- listed the claim of Plaintiff as "pending" (6/25, p. 118) rather than as a concluded judgment

- listed a claim by his mother's estate related to an oral guarantee (which was subsequently withdrawn) (6/25, p. 39, pp. 162-163) but did not list his brother as co-debtor (6/26, p. 60) despite believing such a fact was important

21.    After the death of his mother, and upon learning that he was a beneficiary, Defendant failed to amend his schedules or Statement of Financial Affairs with respect to his inheritance. (6/25, p. 121)

22.    Did not even have any discussions with his counsel about amending his schedules to delete Sandra Carl as a creditor  after the claim was withdrawn. (6/25, p. 41)

23.    In connection with his bankruptcy:

- Defendant claimed he did not know what a "gift" meant (6/26, p. 47)

- Defendant claimed he did not know what "pending" meant (6/26, p. 47)

- Does not remember if he informed his bankruptcy attorney that he was providing 40/hours per week of service to ASS without compensation (6/25, p. 120)

- never considered amending his filings on any issue (6/25, p. 121)

These facts, when applied to the legal principles discussed in this Post-Trial Memorandum, are more than sufficient to justify the Court to deny the Defendant a discharge.

## POINT I

## ANALYSIS UNDER 11 U.S.C. §727(a)(2)(A)

11 U.S.C. §727(a)(2) provides that the Court will grant a debtor a discharge unless "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed (A) property of the debtor, within one year before the date of the filing of the petition." The Bankruptcy Court is specifically directed to examine a debtor's pre-bankruptcy conduct by this section of the statute.

It is important to note that the phrasing of the statute is in the disjunctive. Therefore, the statute permits denial of discharge when the debtor "with intent to hinder, delay **or** defraud a creditor..." (emphasis supplied). See In re Rowe, 234 F.Supp. 114, (E.D.N.Y. 1964) (discussing intent to hinder, delay, or defraud and finding that "the statute reads in the disjunctive so that only one of these three motivating factors is required"). See also Bruno Machinery Corp. v. Troy Dye Cutting Co. (In re Bruno Machinery Corp.), 2010 Bankr. LEXIS 1714, *29-30 (Bankr. N.D.N.Y. 2010). So long as there is an intent to "hinder", the statutory element has been made out.

Similarly, the statute requires that, with respect to his property, debtor has "transferred, removed, destroyed, mutilated **or** concealed..." (emphasis supplied). So long as there is a "concealment" of property, the statutory element is made out. In McCormick v. Security State Bank, 822 F.2d 806 (8th Cir. 1987), a case factually similar to Trust's case against Defendant, a debtor was denied a discharge for what the Court characterized as "lying" to a bank in an interview about his ability to make a payment due on a note owed to the bank. This was due to the fact that the debtor **failed to disclose** certain assets ($55,000-$60,000) at his disposition that would have enabled him to make the payment. The McCormick Court denied the discharge under §727, finding that the

00073332.WPD                                7

debtor concealed assets with the intent to hinder and delay collection. Id. at 808. Similarly, in Pereira

v. Gardner (In re Gardner), 384 B.R. 654, 663 (Bankr. S.D.N.Y. 2008) the Court denied a debtor's

discharge pursuant to §727(a)(2), finding that "concealment alone is sufficient under this

subsection." See also In re Scott, 172 F.3d 959, 967 (7th Cir. 1999) ("Concealment . . . includes

preventing discovery, fraudulently transferring or withholding knowledge or information required

by law to be made known.") (citing U.S. v. Turner, 725 F.2d 1154, 1157 (8th Cir. 1984));[4]Rozen v.

Bezner, 996 F.2d 1527, 1532 (3d. Cir. 1993) ("what is critical under the concealment provision of

§727(a) is whether there is a concealment of property, not whether there is concealment of a

transfer."). As to what constitutes "concealment" for §727 purposes, it has been stated in the leading

treatise, Collier, Bankruptcy §727.02, that "concealment is not confined to physical secretion. It

covers other conduct, such as placing assets beyond the reach of creditors or withholding knowledge

of the assets by failure or refusal to divulge owed information." (emphasis supplied)

*The Transfer of 43 Carl Lane*

The proof at trial showed that Defendant believed that he had substantial equity in his home[5]

and not only transferred the portion of his equity over his homestead exemption for no economic

---

[4] In re Scott cites Black's Law Dictionary 289 (6th Ed. 1990) for the definition of concealment as "withholding of something which one knows and which one, in duty, is bound to reveal."

[5] Defendant testified (6/25 p.27) he believed the full market value of the property was $750,000. The mortgage balance was just under $300,000. Therefore, Defendant made the transfer believing he had $325,000 non-exempt equity in the property. Plaintiff's appraiser, who was the only appraiser who testified, testified to a full market value of $584,000 (6/25 p.135 Ex.27) and the April 2011 appraisal valued the property at $505,000 (Ex.5) because the out building was not included in that value (Joint Stipulation of Facts #7) and a May comparable was not available to the bank appraiser (6/25 p.136). Therefore, the appraised equity over the exemption transferred was either $159,000 or $80,000. Regardless of whether Plaintiff's appraiser's value is accepted, there is no dispute Defendant transferred significant non-exempt value by his deed to himself and his wife.

consideration[6] but also used 85% of that equity to have his wife operate a business (see Melissa Carl testimony 6/26 p.17; Darryl Carl testimony 6/26 p.62)which provided for all his daily living needs (6/26, p. 24) while he claimed no income. Melissa Carl is the sole recipient of the cash withdrawn from the home's equity, which existed before she became an owner of the property (6/26, p. 62). The fact that she agreed to be jointly liable for the mortgage debt can not provide "fair consideration" for that benefit at a time when Debtor had creditors. See Cabrera v. Ferranti, 89 A.D.2d 546 (1982). Given the other bankruptcy filing-related actions in this case, it is clear that this pre-petition conduct is part of an overall plan by Defendant.

In Sharban v. Larson (In re Larson), 2010 Bankr. LEXIS 1186 (Bankr. D.Ma. 2010), the Court, in revoking a discharge, found debtor's pre-petition conduct demonstrated "a long-standing practice of attempting to conceal her assets from her creditors." Sharban at *14. A transfer by a married man of his real property to himself and as wife when he was in default to his creditors has been held fraudulent both under state law and bankruptcy law, despite the cry of "estate planning," leading to a denial of discharge. See Gold v. Laines (In re Laines), 352 B.R. 397 (E.D. Va. 2005).[7] "Love and affection" between husband and wife is not consideration for a real property transfer. See Hickland v. Hickland, 100 A.D.2d 643 (1984); Ally Bank v. Reimer, 2010 U.S. Dist. LEXIS 7887 (E.D.N.Y. 2010).

---

[6] The deed recites a $10.00 consideration and no transfer tax was paid. The lack of any meaningful consideration set forth in the deed is strong evidence that Melissa Carl provided no such consideration. See Geltzer v. Borriello (In re Borriello), 329 B.R. 367 (Bankr. E.D.N.Y. 2005). Defendant admitted (6/25 p.117) there was no economic consideration for the transfer, as did Melissa Carl (6/26 p.9).

[7] Melissa Carl admitted (6/26 p.13) that she and her husband did not engage in any estate planning activities in the months prior to the transfer of the property, making the claims that the transaction was motivated by concern for Defendant's health, rather than protecting the asset from creditors, less than credible.

00073332.WPD

9

*The Operation of Albany Speed Shop*

The proof at trial showed that Defendant worked full time (40 hours/week) at Albany Speed

Shop performing tasks which were both administrative (including marketing) and direct mechanic

services (Joint Stip. of Facts #16; 6/25, pp. 42-43) and yet received no compensation for his efforts

for almost a year, only beginning to take salary after being questioned about the lack of wages in this

case (6/25, p. 43).

The marketing communications of Albany Speed Shop continually referred to Defendant as

an owner of the business. For example:

- In Exhibit 19 Darryl Carl was the co-author of a letter which stated: "Very soon my
  wife **and I** will be opening Albany Speed Shop really close by to our current
  location" (emphasis supplied)

- In Exhibit 21 Darryl Carl himself placed a link on the Albany Speed Shop facebook
  page to "www.swadeology.com" entry which read: "It's called Sonabusa and the
  build continues at Albany Speed Shop, **owned and operated by former New Salem
  Saab proprietor Darryl Carl**" (emphasis supplied)

- In Exhibit 23, the Albany Speed shop blog, there are repeated postings in which
  Darryl Carl, the author of the blog posts, clearly assumes managerial control of the
  business – **"I'll** discount your brake job . . .", (2/1/12) **"I** am seeking a general repair
  technician . . ."** (1/18/12) (emphasis supplied)

00073332.WPD                                    10

- In that portion of Exhibit 18 which has been admitted into evidence[8] Darryl Carl wrote: "New Salem Saab, original dealer code 0069 is lost but not forgotten. In fact, in a way, it had offspring. That offspring is Albany Speed Shop, a/k/a Albany Saab Shop." ". . . we had a choice between two paths. Go to work for someone else or take the road less traveled and **go into business for ourselves**" (emphasis supplied)

Melissa Carl, his wife drew a $975 a week salary even after mid-March 2012 when she took a full time job at another dealership (6/26, p. 21). Melissa paid all of Darryl Carl's living expenses (6/26, p. 24). Mr. Carl was the only person at Albany Speed shop receiving no pay for services rendered (Joint Stip. of Facts #16; 6/26, p. 24). The case law discussed below holds such a set of circumstances to be a basis to deny a discharge due to the concealment of equitable ownership of a business.

Courts have analyzed equitable interests under §727(a)(2), finding that this a type of concealment. "Courts have found an equitable interest where a debtor transfers or allows a third party to assume legal title under suspicious circumstances such as after a debtor has suffered a money judgment or otherwise is under financial pressure but nevertheless retains attributes of beneficial ownership." Rotella & Associates P.A. v. Bellassai, 451 B.R. 594, 600 (Bankr. S.D. Fl. 2011). "Numerous courts have found that debtors who transferred all of their salary, or their right to receive salary, to a family member or to a corporation owned by a family member, yet retained the benefits of such salary, should be denied discharge" citing Baron v. Klutchko, 338 B.R. 554, 571 (Bankr. S.D.N.Y. 2005). In a case called Coady v. D.A.N. Joint Venture L.P., 2009 U.S. Dist. LEXIS 131019

---

[8] Ex. 18 is an article posted at www.saabunited.com which within it contains a letter Darryl Carl wrote to the Saab community. The Court received into evidence that portion of the article (6/25, p. 103) and reserved on the author's commentary (see Point VIII as to why such other portions should be admitted).

(S.D.Fl. 2009) aff'd 488 F.3d 1312 (11th Cir. 2009), a discharge was denied where debtor worked

for his wife's business as an uncompensated independent contractor and she paid his personal and

living expenses. Similarly, in Rotella, the debtor transferred the assets of the company to a new

corporate entity owned by a good friend (who later became his girlfriend). The transferee had

minimal involvement in the company and the debtor's knowledge, advice and daily on-premises

presence insured the company's success, the debtor received no salary and all of the debtor's

personal and living expenses were paid out of the company's business account. The court found that

"this arrangement enabled the debtor to shield his assets from creditors by diverting the fruits of his

labors to [the girlfriend] Ms. Bellows' new corporate shell and having the uninterrupted going

concern directly support his lifestyle." The court found that the debtor had an equitable interest in

the company. Having concealed his equitable interest in the company by "a sham transfer where title

to the property is transferred but the benefits of ownership are retained," the court found that the

debtor intended to hinder, delay and defraud creditors based on the badges of fraud.[9] In Rotella, the

court relied on the close relationship between the debtor and the transferee, the debtor's course of

conduct after the onset of his financial difficulties, the general timing of the events in question, the

fact that the debtor's labor and experience contributed to the company's success and that he was not

compensated for that contribution in any way which could be available to creditors, and denied the

debtor's discharge under §727(a)(2)(A). The court concluded by saying "the debtor intended to short-

change his creditors by diverting and concealing the fruits of his industry to [his girlfriend] who then

provided the debtor with use and enjoyment of material comforts purchased with those fruits.

---

[9] The badges of fraud are generally defined as: "The lack or inadequacy of consideration for the property received, the nature of the relationship between the transferor and the transferee, whether the transferor retains possession, control, benefits or use of the property in question, whether the transfer resulted in insolvency, the cumulative effect of the debtor's transactions and course of conduct after the onset of financial difficulties or threat of suit by creditors and a general chronology in time.

Fraudulent acts are as varied as the fish in the sea." The atypical concealment alleged here is not

reason alone to absolve the debtor of concealment in the one year pre-petition period. Further, Coady

v. D.A.N. Joint Venture L.P., 588 F.3d 1312 (11th Cir. 2009) found that 11 U.S.C. §727(a)(2) does

not require a transfer at all because it refers to the transfer or concealment of assets. That case found

that the debtor acquired and concealed an equitable interest in his wife's businesses where he worked

as an uncompensated independent contractor.

A very recent case, Kaler v. Hentz (In re Hentz), 2013 Bankr. LEXIS 1137 (Bankr. D.N.D.

2013) is directly on point. In that case Mr. Hentz liquidated his business but had numerous creditors.

His wife opened a business involved in a similar type of work in which debtor had made a successful

living. He did administrative, manual and technical work for her because she had a full time job as

an R.N. and had little or no experience in the technical aspects of the business. The debtor received

no compensation from the wife's business and was otherwise unemployed, but used a vehicle owned

by the wife's business and relied on the income generated in the wife's business for his support and

maintenance. The Court denied Hentz a discharge because it was clear debtor held an equitable

ownership in the business, was integral to its success and received income indirectly from it. Citing

some of the authorities discussed above (e.g. Coady v. D.A.N. Joint Venture, supra), the Court held

that a debtor's efforts to "keep the fruits of this industry shrouded equated to intentional concealment

of assets warranting denial of discharge under §727(a)(2)" at *36.

Under §727(a)(2) it is not necessary to establish that the concealment of Darryl Carl's

indirect and hidden income and assets arising from his equitable ownership in Albany Speed Shop

was or could be disclosed in the bankruptcy filings. That issue arises only in the context of the

§727(a)(4) analysis.

## POINT II

## ANALYSIS UNDER 11 U.S.C. §727(a)(4)(A)

Section 727(a)(4)(A) provides for denial of discharge if "the debtor knowingly and fraudulently, in or in connection with the case (A) made a false oath or account..."

A plaintiff must show that the debtor made a statement under oath, that the statement was false, that the debtor knew the statement was false and the debtor made the statement with fraudulent intent and the statement was related materially to the bankruptcy case. Forrest v. Bressler (In re Bressler), 387 B.R. 446 (Bankr. N.D.N.Y. 2008). There is no doubt that the bankruptcy petition and annexed schedules of financial affairs are statements under oath for the purposes of 11 U.S.C. §727(a)(4)(A). See Nef v. Gannon (In re Gannon), 173 B.R. 313 (Bankr. S.D.N.Y. 1994). A false statement can consist of either an affirmative mis-statement **or an omission.** See Republic Credit Corp. v. Boyer (In re Boyer), 367 B.R. 34 (Bankr. D.Conn. 2007). Knowledge of falsity may be established by the debtor's duty to review the schedules to assure accuracy. See In re Zimmerman, 320 B.R. 800 (Bankr. N.D.Pa. 2005). Fraudulent intent may be shown by reckless disregard both of the serious nature of the information sought and the necessary attention to detail and accuracy in answering. See In re Bressler, *supra*. See also Reynold v. Miller (In re Miller), 97 B.R. 760 (Bankr. W.D.N.Y. 1989) ("a debtor's concealment of assets and interests by failing to list them in his bankruptcy petition. . . has been tantamount to fraud."). 11 U.S.C. §727(a)(4)(A)'s purpose within the statutory scheme is to ensure that the trustee and the creditors receive reliable and accurate information in order to assist the trustee in administering the estate. See Baron v. Klutchko (In re Klutchko), 338 B.R. 554 (Bankr. S.D.N.Y. 2005). Even if the incorrect information provided is not prejudicial to creditors, it is still a basis for a denial of discharge because such information is "material" to the administration of the bankruptcy case. See In re Bressler, *supra*.

Courts have repeatedly emphasized the importance of accurately completing bankruptcy schedules and revealing all assets. There have even been instances where the failure to reveal all assets has been the sole cause of a denial of discharge. See, e.g., Lopez v. Vehicle Removal Corporation (In re Lopez), 111 Fed.Appx. 725 (5th Cir. 2004). In Burnes v. Pemco Aeroplex Inc., 291 F.3d 1282 (11th Cir. 2002), the same holding resulted because of the failure to list contingent and unliquidated claims. The Court specifically held in that case "Bankruptcy Courts also rely on the accuracy of the disclosure statements when considering whether to approve a no asset discharge. Accordingly, the importance of full and honest disclosure can not be overstated." 291 F.3d at 1286. The Court reiterated the holding in Browning Mfg. v. Mims (In re Coastal Plains), 179 F.3d 197, 208 (3rd Cir. 1999) that the lack of harm to the creditor is irrelevant because the purpose of the full disclosure requirement is to protect the judicial system rather than the litigants. Id. Finally, the Court in Burnes v. Pemco Aeroplex held that on the issue of whether or not there was an "intentional manipulation of the bankruptcy disclosure," such intentional manipulation can be *inferred* from the record. It held that "the debtor's failure to satisfy its statutory disclosure duty is inadvertent only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." 291 F.3d at 1287.  Motive to conceal was determined to be *inferable* from the fact that the debtor stood to gain an advantage by concealing claims from a Bankruptcy Court. This included the fact that it would be unlikely he would have received the benefit of a no asset complete discharge had his creditors, the trustee, and the Bankruptcy Court known that he had assets even in the form of contingent, unliquidated claims." 291 F.3d at 1288.

Here, the failure to disclose equitable ownership in Albany Speed Shop and the indirect income Defendant received, as per the case law discussed above (Rotella & Associates, P.A. v.

Bellassai, supra; Baron v. Klutchko, supra; Coady v. D.A.N. Joint Venture L.P., supra), amounts to false and misleading omissions in his bankruptcy filings.

The blatantly false statement in SOFA #10 that Debtor had made no transfers of property during the two years prior to the bankruptcy is even more troubling. The substantial equity Debtor had in 43 Carl Lane might well have been required to be re-transferred back to the bankruptcy estate for distribution to creditors and thus, as in Burnes, Debtor here had a motive to withhold that information from the bankruptcy court and trustee.

The facts admitted at trial demonstrate that the omissions and mis-statements in the schedules and statement of financial affairs, in the aggregate, form a more than sufficient basis to establish each and every element of 11 U.S.C. §727(a)(4)(A). In Sharban v. Larson (In re Larson), 2010 Bankr. LEXIS 1186, *14 (Bankr. D.Ma. 2010) the Court revoked a discharge and rejected a defense of unintentional mis-statement, finding that four mis-statements/omissions in the bankruptcy proceedings, by "the sheer number and significance. . . demonstrate, at the very least, a reckless indifference to the truth – the functional equivalent to fraud." See also Vasiliades v. Dwyer, 2006 U.S. Dist. LEXIS 35317 at fn. 18 (Bankr. D.Ma. 2006) ("a pattern of numerous omissions and mis-statements by a sophisticated debtor who has a business background" leads to a conclusion that there is a sufficient basis to deny a discharge.) Here, there are a large number of mis-statements and omissions relating to the transfer of 43 Carl Lane, his inheritance and his relationship to Albany Speed Shop. This is not a matter of a single, perhaps inadvertent, mis-statement or omission.

Mr. Rock has asserted that there is no place in the bankruptcy filing for Mr. Carl to have disclosed his equitable ownership of Albany Speed Shop (6/26, p. 70). That is simply not true. In Schedule B at Item 13 there is an opportunity to disclose "stock **and** interests in incorporated and unincorporated businesses" (emphasis supplied). There is a column where debtor can provide a

"description" of the property interest. The use of "and" in the Item certainly would permit and

encourage Debtor to disclose an equitable interest in a business. Further, Item #21 calls for

disclosure of "other contingent and unliquidated claims of any nature." Surely Mr. Carl could, under

"description" of this type of property interest, have disclosed his equitable claim to income and

assets of Albany Speed Shop.


## POINT III

## ANALYSIS UNDER 11 U.S.C. §727(a)(2)(B)

This subsection of §727 deals with transfers and concealment of property by the Debtor post-

petition with an intent to hinder, delay or defraud creditors. The legal analysis of this subsection of

§727 is identical to that of §727(a)(2)(A) except for the time period when the fraudulent transfer or

concealment takes place. See Freelife Int'l, LLC v. Butler (In re Butler), 2007 Bankr. LEXIS 797

(B.A.P. 9th Cir 2007 at *9-10). Plaintiff asserts that Debtor's actions after January 20, 2012 (the

petition filing date) in continuing to not take a salary or business income while being an equitable

owner of Albany Speed Shop and aggressive exploiting in social media postings of his relationship

with the former customers of New Salem Saab should properly be considered a §727(a)(2)(B)

violation.

The lessons to be drawn from the case law discussed above – Rotella & Associates v.

Bellassai, supra; Baron v. Klutchko, supra and Coady v. D.A.N. Joint Venture, L.P., supra – are

equally applicable to Debtor's wrongful post-petition conduct as they are to his conduct in the

months prior to his filing. The holdings there form a more than adequate basis for a finding of

violation of §727(a)(2)(B) and the resulting denial of discharge.

## POINT IV

### THE CONTENTS OF DEBTOR'S TESTIMONY UNDERMINE HIS CLAIM THAT HE HAS CREDIBLY ESTABLISHED A LACK OF FRAUDULENT INTENT

The Bankruptcy Court is in the best position to assess the credibility of its witnesses and "a debtor's lack of credibility in his testimony before the court is ultimately crucial because honesty is necessary in a debtor's dealings with the court if he desires to obtain the benefit of discharge, which is reserved for honest debtors." Wang v. Ke, (In re Shao Ke) N.D.N.Y. Bankr. Adv. Pro. 09-50132 (August 14, 2013). While the court can examine the witness' demeanor, the court can also "assess credibility based upon the content of the testimony." Id. citing Hamdorf v. Gritton, (In re Gritton), 2003 B.R. LEXIS 210 *12 (Bankr. N.D. Iowa 2003).

In determining whether to believe a witness and here, specifically, in determining whether Darryl Carl's version of events was credible, this Court may take into account a number of factors other than demeanor. Such other factors "go into the decision whether or not to believe a witness. Documents or objective evidence may contradict the witness' story or the story itself may be so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it." In re Leonard Chavin, 150 F.3d 726, 728 (7th Cir. 1998) (citing Anderson v. City of Bessemer City, 470 U.S. 564, 575 [1985]).

In Chavin, the debtor "did not deny the untruthfulness of the statements and of the omissions" but denied any fraudulent intent. The Chavin court might well have been discussing Mr. Carl in holding that "[w]hether to believe a witness depends not only on an instinctual reaction to facial expression, gestures, voice pitch and other cues to honesty, but also on the consistency of the witness' testimony with itself, with other evidence, with common knowledge and with the laws of nature." Id. at 7285 (internal citations omitted).

00073332.WPD                    18

The 7th Circuit, in affirming the District Court, found that the case was exceptional because, like here, Chavin was a businessman who claimed not to have understood certain questions and, like here, "the questions that he claims not to have understood were not esoteric and his explanations for his failure to answer them correctly are ridiculous." Id. at 729. The same can be said for Defendant's contention that he understood neither the term "gift" [10] nor the term "pending", [11] (6/26, p. 52; 6/26, p. 47) which have the same definition in the bankruptcy context as they do in the real world context.

Regardless of his demeanor, Defendant's testimony was simply not credible. Where a court's "own observation" of the debtor "was that of an intelligent man who understood the schedule language of the question . . . his demeanor refuted his testimony that he was ignorant of the filing requirements." See, e.g., Kunce v. Kessler (In re Kessler), 1987 U.S. Dist. LEXIS 6094 (D. Kansas 1987). In fact, courts have routinely held that debtors who have some financial sophistication arising from business experience do not credibly claim that they are "financially ignorant." Aiken-Augusta Autobody, Inc. v. Groomes (In re Groomes), 2002 B.R. LEXIS 1858 (Bankr. D.S.C. 2002). In Groomes, the debtor had been part owner of various businesses, had entered into loan transactions and had been a party to other civil proceedings. Id. at *3. The court rejected the debtor's defenses to a §727(a)(4)(A) action, finding that "Debtor's testimony is not credible and would otherwise require the court to relax standards for persons who are unfamiliar or claim to be unfamiliar with financial documents despite having assistance of counsel." Id. at *13-*14.

---

[10] Mr. Carl admitted that he never asked his attorney what the word "gift" in the bankruptcy forms he was signing meant (6/26, p. 65).

[11] He later did, in fact, articulate a proper understanding of the word "pending" (6/26, p. 57) and a very nuanced understanding of "equitable ownership" (6/26, p. 52). Ultimately, he did admit that he knew as of the date he signed his bankruptcy filing that the Spaulding suit was not "pending" (6/26, p. 58).

In this case the following testimony demonstrates that Mr. Carl's protestations of lack of fraudulent intent should not be accepted as credible.

- He claims for 20 years he ran a business and knew that reviewing documents before signing them for accuracy was important before he signed them (9/26, pp.54-55) and yet his review of his bankruptcy filings was quite cursory (6/25, p. 22; 6/24, p. 58).

- He believed it was important that creditors knew the debt to his mother was jointly owed by himself and his brother but failed to show his brother as a co-debtor (6/26, p. 60).

- He asserts he is "sure" he provided the deed showing the 2011 transfer of 43 Carl Lane to his bankruptcy counsel (6/26, pp. 48-49) but was forced to admit that his deposition testimony was that he did not recall whether or not he provided that deed to Mr. Dillon (6/26, p. 57).

- On the critical issue of pulling equity out of the home and putting 85% of it into Albany Speed Shop, while conceding that would be important information to creditors, he stated that he does not recall providing Mr. Dillon with that critical information (6/26, pp. 62-63) and when reviewing the final forms before filing did not know to ask the attorney why such information was nowhere disclosed in the proposed filings (6/26, p. 63).

- Generally, his approach in reviewing his bankruptcy filings was to not have any conversation with his attorney about the questions and answers set forth in the Statement of Financial Affairs (6/26, p. 58) despite the fact that he does not recall providing a variety of information to counsel to guide him in completing the forms (e.g. 6/26, p. 56; 6/26, pp. 62-63).

00073332.WPD                                    20

It is respectfully submitted that the above cavalier attitude displayed by Mr. Carl demonstrates that his demeanor is insufficient to establish him as a "credible" witness.

## POINT V

### THE LACK OF "PROMPT" AMENDMENT TO DEBTOR'S SCHEDULES AND SOFA IS HIGHLY RELEVANT IN THIS PROCEEDING

As is set forth in other portions of this Memorandum and as was stipulated as a fact (Joint Stip. of Facts #26), there have been no amendments to the Petition, Schedules or the Statement of Financial Affairs of Debtor since the inception of the case. While there is a contested issue as to Debtor's equitable ownership in Albany Speed Shop, it is not contested that there was a transfer of 43 Carl Lane within the one year prior to the bankruptcy, and it is not contested that the Debtor became entitled to acquire an interest as a beneficiary of his mother's estate within 180 days of his filing and that his mother's estate has withdrawn any claim against the bankruptcy estate (Joint Stip. of Facts ##22-24). In each of those instances, Plaintiff asserts that an appropriate amendment to the bankruptcy filings should have been made promptly and the failure to do so is highly relevant to elements of the assertions under §727 so that Debtor should be denied a discharge. The Debtor has asserted, as an affirmative defense to the Complaint and has argued in his closing (6/26 p.67-69), that he is entitled until the close of the case to file amendments to his Schedules and SOFA. Such a defense should not be accepted.

Bankruptcy Rule 1007(h) provides that a debtor shall, within 14 days after acquiring knowledge of his being "entitled to acquire any interest in property," file amended or supplemental schedules. Clearly, such a 14 day action has not occurred in this case with respect to Sandra Carl Estate matters. That violation of a time-limited obligation could form, in itself, a basis to deny

Debtor his requested discharge and Mr. Rock is simply wrong to assert he may properly amend up to the time of the closure of the case. Debtor asserted that he has not ever considered making an amendment to his bankruptcy filings (6/26 p.121).

In Britton Motor Service v. Krich, 97 B.R. 919, 923 (Bankr. N.D. Ill. 1988), the court stated that "failure to **promptly** amend his schedules to reflect such omitted assets is indicative of knowing and fraudulent conduct" (emphasis supplied). In Lawrence v. Childers, 2012 Bankr. LEXIS 20186 (Bankr. E.D. Wa. 2012), the Court held that the debtor had "misrepresented the value of this equitable interest [in her mother's estate] and by the failure to amend that portion of the schedules continued to do so. The facts mandate the conclusion that failure to place a value on this interest in the probate estate constitutes not only a false oath but one made knowingly and fraudulently" at *15-16. Given that the Sandra Carl estate officially withdrew its claim against Debtor on February 15, 2013 (Ex. 26) and yet Debtor still has not amended its filings when he has an inheritance and no offsetting liability to the Sandra Carl estate shows conclusively that he is not forthrightly disclosing his assets so that the bankruptcy court can properly administer the estate.

In a Florida case, Backst v. Reis, (In re Reis), 372 B.R. 521 (S.D.Fl. Bankr. 2007), the court was faced with a single isolated issue, also faced by this Court. In that case, the debtor filed for bankruptcy on June 6, 2006 and his father died on July 12, 2006. The trustee brought an adversary proceeding to deny discharge based solely on the fact that the debtor had not amended his schedules to show the inheritance from his father and because he gave misleading answers at the 2004 examination related to his father and his father's property. The court denied debtor the discharge and accepted the trustee's argument that the debtor had a duty to amend his schedules regarding his right of inheritance upon learning of the inheritance. The court cited Bankruptcy Rule 1007(h).

This Court, in the complicated <u>Paul Hudson</u> bankruptcy, similarly held that Hudson's failure to schedule various transfers of his assets until after creditor Corvetti began an adversary proceeding was evidence of Hudson's disqualification as an honest debtor entitled to a discharge. See <u>Washington 1993, Inc. v. Hudson</u>, 420 B.R. 73, 79-80 (Bankr. N.D.N.Y. 2009).

The rationale for this requirement to promptly amend is set forth in the decisions of <u>In re Tully</u>, 818 F.2d 106 at 111-112 (1st Cir. 1987). The court wrote

> "A debtor cannot, merely by **playing ostrich and burying his head deeply enough in the sand**, disclaim all responsibility for statements which he has made under oath... Sworn statements filed in any court must be regarded as serious business. In bankruptcy administration, the system will collapse if debtors are not forthcoming... The law, fairly read, does not countenance a petitioner's decision to play a recalcitrant game, one where the debtor hides, and the trustee is forced to go seek." (emphasis supplied)

The above holding in <u>Tully</u> completely rebuts Mr. Rock's statement in his closing (6/26 p.68) that the creditor's and trustee's knowledge of the inheritance obviated the need for Debtor to promptly amend the original filings.

In <u>In the Matter of Kilson</u>, 83 B.R. 198 (Bankr. D. Ct. 1988), the court held that a "later disclosure does not expunge a prior false oath" and that while an amendment could be evidence of an "innocent intent", such inference of innocent intent "is slight where the debtor has changed his testimony or amended his schedules only **after the trustee or creditors have already discovered what the debtor sought to hide or when the change in testimony or amended schedules are precipitated by the trustee's persistence in uncovering the truth**." 83 B.R. at 203 (emphasis supplied). Mr. Rock's admission in his closing (6/26 p.67) that perhaps Debtor did not get the "best advice" from Mr. Dillon in initially completing the schedules and that an amendment to the filings would eventually need to be made (6/26 p.68) comes a little bit late and is inconsistent with his other

assertions relating to the lack of need for prompt amendment (see, e.g., Second Affirmative Defense; 6/25, p. 6; 6/26, p. 69). The teaching of <u>Kilson</u> and the other cases discussed above is, therefore, that even if Mr. Carl were to now amend, it would be too late and would not be evidence of mere inadvertent omissions or mis-statements of assets.

**POINT VI**

**PLAINTIFF'S KNOWLEDGE OF DEBTOR'S FINANCIAL AFFAIRS DOES NOT MITIGATE DEBTOR'S CONCEALMENT**

It appears that Debtor asserts that because Plaintiff uncovered issues relating to the Sandra Carl inheritance, the transfer of 43 Carl Lane and Debtor's involvement in the operation of Albany Speed Shop that his failure to schedule such matters has not harmed the creditor or the Trustee's ability to properly administer the estate (See 6/25, p. 71; 6/26, pp. 68-69).

The language cited in the previous section from <u>In re Tully</u> about creditors and trustees not being required to play "hide and seek" is equally true here. In <u>Sholdra v. Chilmark Financial</u>, 249 F.3d 380, 382 (5th Cir. 2001), the court granted summary judgment to the trustee denying a discharge and rejected the debtor's assertion that, because the trustee knew of the failure to make certain disclosures, such prior knowledge prevented the trustee from prevailing on its assertion that a discharge was not properly provided to the debtor.

In many of the cases discussed in Section IV above, it is clear that the trustee or creditor had done their own investigation to learn of the failure to properly list assets in the bankruptcy schedules. Despite such creditor knowledge, the courts considered the merits of creditors' motion to deny a discharge to the debtor who had not truthfully and accurately revealed all of his assets or liabilities at the outset of the case.

00073332.WPD

Similarly, in <u>Tow v. Henley</u>, 480 B.R. 708, 794-795 (Bankr. S.D. Tx. 2012) the court wrote

that:

> "It is the Debtors' duty, not the duty of any of their creditors, to honestly and accurately disclose all transfers, assets, and other relevant information to the Trustee... A creditor's knowledge of a debtor's assets, ownership interest, or any other information does not relieve the debtor of his duty to the trustee... What the [creditor] knew is beside the point. The Debtors' argument that the [creditor's] knowledge of the Financial Statement and the Anderson property negates their own fraudulent intent fails as a matter of law."

## POINT VII

### DEBTOR IS NOT ENTITLED TO THE "RELIANCE UPON COUNSEL'S ADVICE" DEFENSE TO A §727 CLAIM

Having been caught in his web of deceit and forced to testify at deposition in this adversary proceeding, Mr. Carl sought to lay blame somewhere other than at his own feet. Reliance on advice of counsel may sometimes negate the intent required for the denial of a discharge pursuant to 11 U.S.C. §727. Mr. Carl sought, belatedly, to rewrite his lies as mistakes, honestly made upon the advice of counsel. He did not assert "reliance on counsel" as an affirmative defense. As established below, any argument based on an alleged reliance on advice of counsel fails herein for numerous reasons.

His deposition and trial testimony about his reliance on attorney advice does not absolve Carl of his own duty "to personally ensure that the information which [he] provided the court was accurate to the best of [his] knowledge." <u>Kaler v. McLaren</u> (<u>In re McLaren</u>), 236 B.R. 882, 898 (Bankr. N.D. 1999).

Despite receiving advice of counsel, a debtor has an independent obligation to carefully review all documents. <u>McLaren</u> at 898. Defendant's efforts to hide behind the alleged advice of

Attorney Dillon must fail. "A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." Boroff v. Tully (In re Tully), 818 F.2d 106 (1ˢᵗ Cir. 1987) (affirming denial of discharge).

First, there must be full and fair disclosure to the attorney such that the attorney is "made fully aware of all relevant facts." See, e.g., Kaler v. McLaren (In re McLaren), 236 B.R. 882, 897 (Bankr. N.D. 1999) (internal citations omitted) (denying a discharge despite a defense of advice of counsel).

Second, the debtor's reliance must have been reasonable and in good faith. See, e g., IRS v. Colish (In re Colish), 289 B.R. 523 (Bankr. E.D.N.Y. 2002) (revoking discharge over defense of advice of counsel).

Third, reliance on advice of counsel defense fails when it is transparently plain that the advice isn't proper (such that property should be scheduled, a box checked, or a creditor listed). See, e.g., Weiss v. Winkler, 2001 U.S. Dist. LEXIS 5148 (E.D.N.Y. 2001) (denying discharge over debtor's claim of inexperience of his attorney), or is so straightforward that it requires no legal explanation for an individual to answer the question or provide the accurate data. See Ross v. Wolpe (In re wolpe), *supra., citing* JP Morgan v. Koss (In re Koss), 403 B.R. 191, 214 (Bankr ED Mass 2009).

This Court has the ability to look to the totality of the circumstances in order to determine whether a debtor's claim of reliance on advice of counsel is credible. See, e.g., Furr v. Godley (In re Godley), 164 B.R. 780 (Bankr. S.D. Fl. 1994). As was demonstrated at trial, an analysis of the totality of the circumstances surrounding Mr. Carl's defense of reliance on advice of counsel clearly demonstrates that his claim is not credible. Mr. Carl, in fact, exhibits the necessary intent to hinder,

delay or defraud Plaintiff, the Chapter 7 trustee and this Court in the administration of his bankruptcy estate.

    A.    <u>Defendant Failed to Make Full and Fair Disclosure of the Facts to His Counsel</u>

To succeed on his defense to the 11 U.S.C. §727 action based on his claimed reliance on advice of counsel, Defendant had to make a full and fair disclosure to the counsel. See, e.g., <u>In re Colish</u>, 289 B.R. 523 (Bankr. E.D.N.Y. 2002). Reliance only absolves the debtor of the intent under §727 "where the advice given was informed advice." <u>Kaler v. McLaren</u> (<u>In re McLaren</u>), 236 B.R. 882, 897 (Bankr. N.D. 1999) (denying defense of advice of counsel where the court was unpersuaded where the attorney "was fully or even substantially aware of all facts necessary to accurate preparation of the schedules and statements"); see also <u>Roberts v. Oliver</u> (<u>In re Oliver</u>) 414 B.R. 361 (E.D.Tenn. 2009) (attorney must be fully informed before giving advice).

Once the debtor begins to provide information concerning an asset, a duty arises thereafter of accuracy and truth and to avoid negligent omission thereafter. <u>In re Portnoy</u>, 201 B.R. 685 (S.D.N.Y. 1996). Carl's failure to make a full and fair disclosure, and his educated decision to only selectively disclose certain assets, precludes any defense of reliance on advice of counsel. See, e.g., <u>American State Bank v. Montgomery</u> (<u>In re Montgomery</u>), 86 B.R. 948, 960 (Bankr. N.D.Ind. 1988); <u>Equitable Bank, N.A. v. Cleveland</u> (<u>In re Cleveland</u>), 1985 Bankr. LEXIS 6132 *23 (Bankr. E.D.Va. 1985).

When asked, Mr. Carl could not recall that he informed his bankruptcy attorney that he had transferred interest in his home to his wife for no economic consideration and that he had her use the home equity loan they obtained to start her business (6/26, pp.62-63) despite agreeing that such information would be important for the creditors in his bankruptcy to have (6/26, p. 63).

B.    Reliance on the Advice of Counsel Must Be Reasonable and in Good Faith.

Reliance on advice of counsel "must be in good faith and any protection based on reliance on debtor's counsel will only act as protection to the extent the reliance was reasonable." IRS v. Colish (In re Colish), 289 B.R. 523, 542 (Bankr. E.D.N.Y. 2002) (revoking discharge for failure to disclose future interests on schedules). Barnett Bank of Tampa N.A. v. Muscatell (In re Muscatell), 113 B.R. 72, 74 (Bankr. M.D. Fl. 1990) ("It must be established that the reliance occurred in fact and that the reliance was in good faith."). In Muscatell, the Court denied the debtor's discharge due to the debtor's failure to list numerous assets, including joint accounts, where the debtor claimed he relied on advice of counsel. In re Colvin, 288 B.R. 477 (Bankr. E.D.Mich. 2003), a case under 11 U.S.C. 521, the debtors' claim for an exemption was denied despite their arguments of reliance on advice of counsel where the debtors' attorney failed to ask about tax refunds and the Court held that "it was plainly not reasonable for the debtors to rely on that failure." Colvin at 483. Similarly, any failure of Attorney Dillion to gather other documents or probe Darryl Carl on various issues does not absolve Defendant of his obligations. This is especially true in this case where, despite a claim of lack of understanding of terms used in the bankruptcy form, the debtor makes no effort to make inquiry of his counsel before signing the completed forms. (See 6/26 p.65 where Defendant admits that despite not understanding "gift" or "transfer", he made no inquiry of counsel.) As the Court pointed out in Ross v. Wolpe and repeated in his bench ruling denying the motion to dismiss at the end of the Plaintiff's case (6/26, p.42), there are many words used in the bankruptcy forms of which even laymen should have a reasonable understanding. A debtor can not hide behind the advice of counsel when they answer questions involving such terms in a way which conceals assets.

Failure to carefully read and review the Petition and SOFA is no defenses. See Ross v. Wolpe, *supra; citing* In re Zimmerman, 320 B.R. 800,806 Bankr MD Pa 2005) Like in Colvin, it

is not reasonable for Carl to have relied on Attorney Dillon's failure to ask him the specific

questions. Like in <u>Colvin</u>, where Schedule B, Line 17 explicitly required the disclosure of tax

refunds, here, question 10(a) of the Statement of Financial Affairs specifically required the disclosure

of transfers in the year prior to the bankruptcy filing and, like in <u>Colvin</u>, Darryl Carl's failure to make

such disclosure can not be excused on the basis of his claim of advice of counsel, particularly where,

as here, Defendant did not provide accurate and complete information to his attorneys.

    C.    <u>The Advice Relied Upon Can Not Be Improper</u>

    Simply stated, "advice of counsel is not a defense if the action counsel advised is improper."

<u>In re Shebel</u>, 54 B.R. 199, 203 (Bankr. D.Vt. 1985) (granting discharge only because testimony

showed that the debtor intended to amend the schedules as soon as accurate information was

available). "The defense of reliance on counsel is not available when it is transparently plain that the

advice is improper. The schedules made it transparently plain to the debtors that they were required

to disclose [certain items] even if their attorney did not inform them of that specific disclosure

obligations." <u>In re Colvin</u>, 288 B.R. 477, 483 (Bankr. E.D.Mich.2003) (internal citations omitted).

See also <u>Furr v. Godley</u> (<u>In re Godley</u>), 164 B.R. 780, 781 (Bankr. S.D.Fl. 1994) ("the defense of

reliance on counsel is not available when it is transparently plain that the advice is improper")

(internal citations omitted); <u>Weiss v. Winkler</u>, 2001 U.S. Dist. LEXIS 5148 *12 (E.D.N.Y. 2001)

(same); <u>In re Kelly</u>, 135 B.R. 459, 469 (Bankr. S.D.N.Y. 1992); <u>Barnett Bank of Tampa N.A. v.

Muscatell</u> (<u>In re Muscatell</u>) 113 B.R. 72, 75 (M.D.Fl. 1990) (denying discharge despite defense of

advice of counsel and finding that "advice of counsel to the effect that property which the bankrupt

undoubtedly owned was not required to be scheduled was not an acceptable defense for failure to

schedule property since such advice related to a pain, palpable and transparent fact."); <u>Montey Corp.

v. Maletta</u> (<u>In re Maletta</u>), 159 B.R. 108, 112 (Bankr. D. Conn. 1993) (denying discharge over claim

of reliance on advice of counsel because "the debtor is not exonerated by pleading that he or she

relied on patently improper advice of counsel.").

Claiming a mistaken belief on the part of the attorney, for example with respect to the use

of proceeds from the home equity loan to finance Albany Speed Shop, is insufficient to support a

defense of reliance on advice of counsel. In <u>Ramos v. Collins</u> (<u>In re Collins</u>), 19 B.R. 874, 878

(Bankr. M.D.Fl.1982), discharge was denied where "counsel seized on some legal authority and the

legislative history to suggest that [an action was permissible]." Such advice of counsel was not a

defense because the advice was, in fact, improper. In <u>Collins</u>, the Court refused to allow the debtor

to simply claim mistake and counsel to claim "blame me not the debtor, it was due to mistake and

inadvertence" and denied the discharge despite the defense of advice of counsel. Similarly, here, Mr.

Dillon's improper advice, and complicity in allowing Mr. Carl to fail to fully and accurately disclose

or describe his property transfer and his hidden interest in Albany Speed Shop on his statement of

financial affairs does not serve to negate Defendant's intent under §727. Mr. Carl admitted he

discussed with Attorney Rock the issue of the need to amend relating to the Sandra Carl inheritance

but made no amendment. Mr. Rock's determination to ignore the mandate of Rule 1007(h) is not

advice that Mr. Carl can use to avoid a discharge.

> D.    The Totality of the Circumstances Clearly Indicates That Carl's Reliance on Advice
>         of Counsel Argument Is Not Credible.

The Court is entitled to review the totality of the circumstances, including the debtor's

education, business experience, testimony of the debtor, other testimony at trial, and the Court's own

observations regarding a debtor and other's conduct in determining whether there is an appropriate

reliance on advice of counsel defense. See, e.g., <u>Gordon v. Hutchinson</u> (<u>In re Hutchinson</u>), 328 B.R.

30 (Bankr. W.D.N.Y. 2005) (denying discharge over advice of counsel defense because "any

testimony of the debtor to that effect I find, after hearing his testimony, observing him at trial, and

considering other matters discussed in this decision and order, not to be credible"); <u>Montey Corp. v. Maletta</u> (<u>In re Maletta</u>), 159 B.R. 108 (Bankr. D. Conn. 1993). Darryl Carl , having run a large automobile dealership and acknowledging the importance of accuracy in written documents for 20 years (6/26, pp. 54-55), is "a knowledgeable and sophisticated business person who clearly has the mental capacity to understand the questions posed on the petition." <u>Weiss v. Winkler</u>, 2001 U.S. Dist. LEXIS 5148 *4 (E.D.N.Y. 2001). Defendant, a business person should not now be permitted to suddenly feign stupidity and ignorance.

Where a debtor "unconvincingly [tries] to present a demeanor of being unintelligent and unsophisticated," the Court may choose to disbelieve the debtor. See <u>In re Hutchinson</u> at 34 (denying discharge where debtor claimed he did not know what a liquidated debt was but court found that he knew what a debt was). Here, even if Mr. Carl was unaware of legal niceties , he was at least aware of the business and economic realities of the activities in which he engaged sufficient to answer the questions on the SOFA accurately and truthfully and can not now plead ignorance on the topic. He gave, when pressed, a proper understanding of "pending" (6/26, p. 57) and "equitable ownership" (6/26, p. 52). Where a debtor appears "evasive at times and not always forthcoming" the debtor's testimony may defy belief such that reliance on advice of counsel is not an available defense. See, e.g., <u>Weiss v. Winkler</u> at *4.

## POINT VIII

### PLAINTIFF'S EXHIBITS 18 AND 22 ARE ADMISSIBLE

At trial, Plaintiff sought to have Exhibits 18 and 22 entered into evidence over Defendant's objection, and the Court reserved decision.[12]

---

[12] The Court did admit into evidence the portion of Ex. 18 which was a letter from Darryl Carl to the Saab community (6/25, p. 103)

Exhibit 18 is a web article/blog entry and subsequent comments, all of which appear on the webpage www.saabunited.com when it is accessed. Darryl Carl left a comment after the web article/blog entry. He admits to being on the subject webpage, commenting in the "comments" section related to the comments on the specific web article/blog entry, but claims only that he may have seen the actual web article/blog entry (6/25, pp. 98-99).[13] Defendant contends that his comment was to another comment to the blog entry, and not to the entry itself and thus, according to Defendant, the blog entry is not properly authenticated and its contents were not adopted by Defendant (6/25, p. 100). Plaintiff articulated the position that the document was properly authenticated and should be admitted (6/25, pp. 99-101) and further that Defendant's actions and specifically posting a comment demonstrates his awareness of the blog entry.

This Court can admit relevant evidence that is properly authenticated, pursuant to Federal Rules of Evidence 104 and 901 made applicable in the bankruptcy context by FRBP 9017.   In examining authentication, a court can admit social media evidence based on "all of the individual, particular details considered in combination." Tienda v. Texas, 358 S.W.3d 633, 645 (2012). All the details here, and specifically Plaintiff's admissions that he was on the website and commented on a response to the specific post in question, indicate its admissibility

By commenting on the webpage, in response to a comment on the article, Defendant "manifested an adoption or belief in its truth." United States v. Kettles, 2013 U.S. App. LEXIS 5831 (6th Cir. 2013).  See also Jones v. Dirty World Entertainment Recordings, LLC, 2013 U.S. Dist.

---

[13] His deposition testimony was read back to him wherein he testified that he probably saw the blog entry (Ex. 18) on the internet when it was posted (6/25, p. 95). Further, the admitted portion of Ex. 18 includes a letter written by Darryl Carl wherein he specifically admits that he reads the blog regularly – he states he is an "active" reader of the blog and "[e]very day, several refreshes!" (Ex. 18 at page with advertisement for stateofnine.com).

Lexis 113031 at *9,14 (E.D.KY. 2013) (analyzed under a specific statutory scheme, but finding that commenting on a post "implicitly" adopted it and "effectively ratified" it).

Plaintiff also seeks to have <u>Exhibit 22</u>, a You Tube video post identifying Darryl Carl as "owner" of Albany Speed Shop, admitted into evidence. As to Exhibit 22, Defendant admits seeing the You Tube webpage with the video sometime after it was posted and that he never requested that the reference to him as "owner" be removed (6/25, pp. 110-111). Likewise, Defendant stipulated that he failed to take any efforts to have social media posting listing him as owner removed (Joint Stipulated Facts at ¶29). Here, individual details considered in combination also indicate that Exhibit 22 should be admitted. <u>Tienda v. Texas</u>, <u>supra</u>.

Although not essential to establish the point that Plaintiff has asserted throughout the trial – that Darryl Carl had an interest in Albany Speed Shop concealed from creditors and not disclosed in his bankruptcy filings –, once admitted, the contents of Exhibits 18 and 22 provide additional evidence of public references known to Defendant, referring to him as "owner" of Albany Speed Shop. These references further demonstrate Darryl Carl's equitable ownership of Albany Speed Shop, as discussed at pp. 7-8. For example:

- In <u>Exhibit 18</u> the blog provides that Darryl Carl "has been very busy starting a new business and making sure he reaches all of his past clients to let them know. . ."

- <u>Exhibit 22</u> is a video with the title "Technical Seminar at Albany Speed Shop presentation by **owner** Darryl Carl" (emphasis added)

These exhibits, as well as those referenced at pp. 7-8, demonstrate that a public perception of Darryl Carl as owner was fostered and never corrected by Defendant.

## CONCLUSION

The Court is faced with the decision of whether to impose the "death sentence" of bankruptcy by denying the Debtor a discharge. Understandably there is a reluctance to do so if there are reasons to avoid doing so. However honesty and full disclosure is key and once an absence of such attributes are found to exist on a material issue with respect a bankruptcy filing it is not appropriate for the Court to minimize the wrong and reward the Debtor by providing him the "fresh start" which must be earned by honest and full disclosure. As Learned Hand wrote long ago, but echoed recently by a bankruptcy court:

> "A Court will not measure the dishonesty of a bankrupt, once that is shown; a discharge is a privilege granted only to such as do not practice on their creditors that way. The law forbids all efforts to put property beyond the reach of creditors no matter what its value; so long as the courts are tolerant of such conduct men will engage in it and the purpose of the bankruptcy act will be balked."
>
> Feyman v. Rosenthal (In re Feyman), 77 F.2d 320, 321 (2d Cir.1935),
> *quoted in* In re DeMartino, 488 B.R. 122,131 (Bankr. EDNY 2011)

For all the reasons set forth herein and the proof to be presented at the trial of this matter, Plaintiff should be entitled to a judgment denying Defendant a discharge.

Dated: October 15, 2013

Respectfully submitted:

***ATTORNEYS FOR PLAINTIFF***

GANZ WOLKENBREIT & SIEGFELD LLP

By: _____
        Robert E. Ganz
Office and Post Office Address
One Columbia Circle
Albany, New York 12203
(518) 869-9500
reg@gwlaw.com

00073332.WPD                                    34